# EXHIBIT 2

<u>**DRAFT 9-21-12**</u>
<u>**DO NOT RELEASE – ATTORNEY WORK PRODUCT**</u>
<u>**CONFIDENTIAL SETTLEMENT INFORMATION**</u>

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| UNITED STATES OF AMERICA and the STATE OF FLORIDA, </br>        Plaintiffs, </br> </br>v. </br> </br>MIAMI-DADE COUNTY, FLORIDA, </br>        Defendant. | Case: No. </br><u>CONSENT DECREE</u> |

-i-

TABLE OF CONTENTS

I. JURISDICTION AND VENUE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

II. APPLICABILITY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

III. OBJECTIVES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

IV. DEFINITIONS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

V. REVIEW OF DELIVERABLES/CERTIFICATION OF DELIVERABALES . . . 14

VI. COMPLIANCE REQUIRMENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

VII. CIVIL PENALTY. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 53

VIII. SUPPLEMENTAL ENVIRONMENTAL PROJECT. . . . . . . . . . . . . . . . . . . . . 54

IX. REPORTING REQUIREMENTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 57

X. STIPULATED PENALTIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 57

XI. FORCE MAJEURE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 59

XII. DISPUTE RESOLUTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 61

XIII. RIGHT OF ENTRY AND INFORMATION COLLECTION
        AND RETENTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 64

XIV. EFFECT OF SETTLEMENT/RESERVATION OF RIGHTS. . . . . . . . . . . . . . 67

XV. COSTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 68

XVI. NOTICES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 69

XVII. EFFECTIVE DATE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 71

XVIII. RETENTION OF JURISDICTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 71

XIX. MODIFICATION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 71

XX. TERMINATION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 72

XXI. PUBLIC PARTICIPATION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 73

XXII. SIGNATORIES/SERVICE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 74

XXIII. INTEGRATION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 74

XXIV. FINAL JUDGMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 74

XXV. APPENDICES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 75

DRAFT

WHEREAS, Plaintiff, the United States of America ("United States"), by the authority of the Attorney General of the United States and through its undersigned counsel, acting at the request and on behalf of the United States Environmental Protection Agency ("EPA"), filed a Complaint (the "Complaint") concurrently with the lodging of this Consent Decree alleging that the Defendant, Miami-Dade County, Florida ("Miami-Dade"), has violated and continues to violate Sections 301 of the Clean Water Act, 33 U.S.C. § 1311 ("CWA"), and the terms and conditions of its National Pollutant Discharge Elimination System ("NPDES") permits issued under Section 402 of the CWA, 33 U.S.C. § 1342;

WHEREAS, Plaintiff, the State of Florida (the "State"), acting at the request of the Florida Department of Environmental Protection ("FDEP"), joined in the Complaint and seeks injunctive relief and civil penalties for Miami-Dade's alleged violations of the Florida Administrative Code Rule ("Fla. Admin. Code") Rule 62-604 and Sections 403.141 and 403.161 Florida Statutes ("Fla. Stat.");

WHEREAS, FDEP has been authorized by EPA to administer the NPDES program in the State of Florida pursuant to Section 402(b) of the CWA, 33 U.S.C. § 1342(b);

WHEREAS, the State is also a plaintiff in this action and is joined as a party under Section 309(e) of the CWA, 33 U.S.C. § 1319(e), which requires the state in which a municipality is located to be joined as a party whenever the municipality is a party to a civil action brought by the United States under Section 309 of the CWA;

WHEREAS, Miami-Dade is a political subdivision of the State of Florida and a "municipality" pursuant to Section 502 of the CWA, 33 U.S.C. § 1362;

WHEREAS, Miami-Dade owns and operates a publically owned treatment works ("POTW") consisting of a municipal wastewater collection and transmission system ("WCTS"), which is designed to collect and convey municipal sewage (domestic, commercial and industrial), and three (3) municipal wastewater treatment plants: the North District Wastewater Treatment Plant ("North District WWTP"), the Central District Wastewater Treatment Plant ("Central District WWTP") and the South District Wastewater Treatment Plant ("South District WWTP");

WHEREAS, Miami-Dade's POTW is one of the largest public utilities in the United States providing both water and wastewater service to a population of over 2 million with 336,000 retail sewer accounts as well as fifteen (15) Volume Sewer Customers and numerous private collection systems. The POTW consists of three regional WWTPs, 1,035 Pump Stations, roughly 910 miles of Force Main and approximately 3,071 miles of Gravity Sewer interceptors, Gravity Sewers and siphons. Additionally, Miami-Dade is responsible for an estimated 2,241 miles of public laterals, for a total collection and transmission system of nearly 6,000 miles.

WHEREAS, the Volume Sewer Customers are responsible for collection and transmission systems totally nearly 1,200 miles

WHEREAS, the Miami-Dade estimates that at least 10% of its Force Mains and Gravity Sewer interceptors are greater than fifty (50) years old, at least 42% is twenty-five (25) to fifty (50) years old, at least 26% is less than twenty-five (25) years old, and 22% is of unknown age.

WHEREAS, the North District WWTP is regulated pursuant to NPDES Permit Number FL0032182, issued to Miami-Dade by FDEP pursuant to Section 402 of the CWA, 33 U.S.C. § 1342, Chapter 403 Fla. Stat. and applicable rules of the Fla. Admin. Code;

WHEREAS, the North District WWTP is also regulated pursuant to Florida Permit Number 0057792-009-UO, issued by FDEP to Miami-Dade pursuant to the Underground Injection Control requirements and regulations of the Safe Drinking Water Act, 42 U.S.C. § 300h, and Chapter 403 Fla. Stat. and applicable rules of the Fla. Admin. Code, as its treated wastewater is emplaced subsurface through well injection;

WHEREAS, the Central District WWTP is regulated pursuant to NPDES Permit Number FL0024805, issued to Miami-Dade by EPA pursuant to Section 402 of the CWA, 33 U.S.C. § 1342, as the ocean outfall for the Central District WWTP extends into federal waters;

WHEREAS, the Central District WWTP is also regulated pursuant to Florida Permit Number FLA024805, issued by FDEP to Miami-Dade pursuant to Chapter 403 Fla. Stat. and applicable rules of the Fla. Admin. Code;

WHEREAS, the South District WWTP is regulated pursuant to Permit Number FLA042137, issued by FDEP to Miami-Dade pursuant to Chapter 403 Fla. Stat. and applicable rules of the Fla. Admin. Code;

WHEREAS, the South District WWTP is also regulated pursuant to Florida Permit Numbers 61787-022-UO and 61787-023-UC, issued by FDEP to Miami-Dade pursuant to the Underground Injection Control requirements and regulations of the Safe Drinking Water Act, 42 U.S.C. § 300h, and Chapter 403 Fla. Stat. and applicable rules of the Fla. Admin. Code, as its treated wastewater is emplaced subsurface through well injection;

WHEREAS, on January 13, 1994, the United States District Court, Southern District of Florida, entered the First Partial Consent Decree resolving certain claims brought by the United States against Miami-Dade in a complaint pursuant to Section 504 of the CWA, 33 U.S.C. §

1364, concerning the alleged threat presented by Miami-Dade's continued use of the seventy-two (72) inch Force Main that conveyed untreated wastewater from the City of Miami under Biscayne Bay to the Central District Plant;

WHEREAS, the First Partial Consent Decree required Miami-Dade to implement certain injunctive relief measures, including measures to address the alleged threat presented by Miami-Dade's continued use of the seventy-two (72) inch Force Main that conveyed untreated wastewater from the City of Miami under Biscayne Bay to the Central District Plant;

WHEREAS, the State was identified in the First Partial Consent Decree as a statutory defendant pursuant to Section 309(e) of the CWA, 33 U.S.C. § 1319(e);

WHEREAS, on September 12, 1995, the United States District Court, Southern District of Florida, entered the Second and Final Partial Consent Decree resolving the outstanding claims brought by the United States against Miami-Dade in the complaint pursuant to Sections 301, 309(b) and (d), and 402 of the CWA, 33 U.S.C. §§ 1311, 1319(b) and (d), and 1342, alleging that the discharge of untreated wastewater from Miami-Dade's WCTS without a permit (also known as sanitary sewer overflows or "SSOs") constitutes a violation of the CWA, the regulations promulgated thereunder, and the various terms and conditions of the NPDES Permits;

WHEREAS, the Second and Final Partial Consent Decree required Miami-Dade to implement certain injunctive relief measures to address the SSOs from Miami-Dade's WCTS;

WHEREAS, the State was identified in the Second and Final Partial Consent Decree as a statutory defendant pursuant to Section 309(e) of the CWA, 33 U.S.C. § 1319(e);

WHEREAS, since entry of the First Partial Consent Decree and the Second and Final Partial Consent Decree, Miami-Dade has successfully complied with and/or completed a

substantial portion of the injunctive relief measures required by both the First Partial and Second and Final Partial Consent Decrees;

WHEREAS, Miami-Dade contends that from fiscal year 1995 to fiscal year 2011 it has spent approximately $1.8 Billion upgrading its wastewater infrastructure and achieving significant progress in implementing and improving Capacity, Management, Operations and Maintenance ("CMOM") programs in compliance with the requirements of various consent decrees and settlement agreements including, without limitation, the First Partial Consent Decree, the Second and Final Partial Consent Decree, and FDEP's Settlement Agreement System Wide and Settlement Agreement Cross Bay Line; and as a result, the number and volume of SSOs have been significantly reduced and with no capacity-related SSOs in the WCTS for the period from 2002 through October 2011 despite the increase in service area population and Hurricanes Wilma and Katrina;

WHEREAS, Miami-Dade contends that, as a result of the First Partial Consent Decree and the Second and Final Partial Consent Decree, it has implemented and continues to implement a $300 million Pump Station Improvement Program ("PSIP") to upgrade the WCTS including Pump Stations and Force Mains pursuant to which each Pump Station had to be certified as capable of meeting a nominal average pump operating time ("NAPOT") of less than or equal to 10 hours per day; and Pump Stations exceeding the NAPOT criteria had to have a Remedial Action Plan and no building permits could be issued for connections to WCTS upstream of that station; and as a result, a total of 666 Remedial Action Plans were prepared and submitted to EPA through June 30, 2012, and a total of 664 Pump Stations and 222 Force Main projects have been completed;

WHEREAS, Miami-Dade contends that, as a result of the First Partial Consent Decree and the Second and Final Partial Consent Decree, it has implemented an Infiltration/Exfiltration/Inflow ("I/E/I") Program to minimize the amount of groundwater infiltration, to redirect rainwater inflow from the sanitary sewers and to minimize potential leakage of raw sewage from defective sewers resulting in more than 32,000 mandated repairs being completed and, as of December 31, 2011 an estimated 127 mgd of I/I being removed from the WCTS;

WHEREAS, the First Partial Consent Decree and the Second and Final Partial Consent Decree mandated improvements in fats, oils and grease ("FOG") control and volume customer control resulting in Miami-Dade adopting the following ordinances: (1) Grease Trap Ordinance, June 21, 1994 and (2) Volume Sewer Customer Ordinance, November 12, 1997;

WHEREAS, the Parties recognize that since entry of the First Partial Consent Decree and the Second and Final Partial Consent Decree, conditions within and circumstances surrounding Miami-Dade's WCTS and WWTPs have changed over the last eighteen (18) years, including, in particular, the causes and locations of SSOs;

WHEREAS, in April 2011, Miami-Dade conducted a CMOM Program self assessment to review its current programs to determine how these programs should be modified in order to more effectively address SSOs and improve system performance; and on May 1, 2011, Miami-Dade submitted to EPA a CMOM Report;

WHEREAS, as a result of such changed circumstances and conditions and the issues identified in Miami-Dade's self-assessment, the Parties recognize that appropriate modifications

and updates to the required injunctive relief terms of both the First Partial Consent Decree and the Second and Final Partial Consent Decree are warranted;

WHEREAS, it is recognized that there are Volume Sewer Customers that own and operate their own wastewater collection and transmission systems that discharge into Miami-Dade's WCTS;

WHEREAS, the Parties intend for the terms and conditions of this Consent Decree to replace and supersede in their entirety the terms and provisions of both the First Partial Consent Decree and the Second and Final Partial Consent Decree as entry of this Consent Decree will occur simultaneously with the termination of both the First Partial Consent Decree and the Second and Final Partial Consent Decree;

WHEREAS, Miami-Dade has reported to EPA and FDEP within the last five (5) years numerous SSOs from its WCTS, including a number of large volume SSOs from ruptured Force Mains;

WHEREAS, Miami-Dade has also reported to EPA and FDEP within the last five (5) years a number of exceedances of the effluent limitations in the NPDES Permits;

WHEREAS, EPA and FDEP have inspected Miami-Dade's WCTS and WWTPs and have discovered a number of improper management, operations, and maintenance practices;

WHEREAS, the United States and the State contend that these SSOs; effluent limit exceedances; and improper management, operation, and maintenance practices are violations of the CWA, the Fla. Admin. Code, and the NPDES Permits;

WHEREAS, this Consent Decree requires Miami-Dade to develop, submit, finalize, and implement plans for the continued improvement of its WCTS and WWTPs to eliminate, reduce,

prevent or otherwise control SSOs; to correct effluent limit violations; and to properly manage, operate and maintain its WCTS and WWTPs;

WHEREAS, the Parties acknowledge that, in 2008, the State of Florida enacted Chapter 2008-232, Laws of Florida which prohibits construction of new ocean outfalls and requires that all six (6) ocean outfalls in Florida cease discharging wastewater by December 31, 2025; and that wastewater facilities that discharged wastewater through an ocean outfall on July 1, 2008, are required to install a reuse system (capable of providing a minimum of 60 percent of the wastewater facilities actual annual flow for beneficial reuse) no later than December 31, 2025, and submit a detail implementation plan by July 1, 2013;

WHEREAS, the Parties acknowledge that the implementation of this legislation will impact the scope and scheduling of the capital improvements projects identified in Appendix D of this Consent Decree;

WHEREAS, the Parties to this Consent Decree have negotiated in good faith and have reached a settlement of the issues raised in the Complaint;

WHEREAS, Miami-Dade's agreement to this Consent Decree is not an admission of liability to the allegations arising out of transactions or occurrences alleged in the Complaint, and except for Miami-Dade's consent to jurisdiction and venue as provided in Section I of this Consent Decree, nor is it an adjudication or admission of any fact or law;

WHEREAS, the Parties recognize, and the Court by entering this Consent Decree finds, that this Consent Decree has been negotiated by the Parties in good faith and will avoid litigation between the Parties and that this Consent Decree is fair, reasonable, and in the public interest;

NOW THEREFORE, with the consent of the Parties, it is hereby ORDERED, ADJUDGED and DECREED as follows:

## I. JURISDICTION AND VENUE

1. This Court has jurisdiction over the subject matter of this action, pursuant to 28 U.S.C. §§ 1331, 1345, and 1355, and Section 309(b) of the CWA, 33 U.S.C. § 1319(b), and over the Parties. This Court has supplemental jurisdiction over the state law claims asserted by the State pursuant to 28 U.S.C. § 1367. Venue is proper in the Southern District of Florida pursuant to Section 309(b) of the CWA, 33 U.S.C. § 1319(b), and 28 U.S.C. §§ 1391(b) and 1395(a), because the violations alleged in the Complaint are alleged to have occurred in this judicial district. For purposes of this Consent Decree, or any action to enforce this Consent Decree, Miami-Dade consents to the Court's jurisdiction over this Consent Decree and any such action and over Miami-Dade and consents to venue in this judicial district.

2. For purposes of this Consent Decree, Miami-Dade agrees that the Complaint states claims upon which relief may be granted pursuant to Section 309(b) of the CWA, 33 U.S.C. § 1319(b); Sections 403.161, 403.141, and 403.121 Fla. Stat.; and Fla. Admin. Code Rules 62-600 and 62-528.

## II. APPLICABILITY

3. The obligations of this Consent Decree apply to and are binding upon the United States, the State, and upon Miami-Dade and any successors, assigns, or other entities or persons otherwise bound by law.

4. No transfer of ownership or operation of any portion of the WCTS or of any WWTP, whether in compliance with the procedures of this Paragraph or otherwise, shall relieve