Miami-Dade of its obligation to ensure that the terms of this Consent Decree are implemented. At least thirty (30) Days prior to such transfer, Miami-Dade shall provide a copy of this Consent Decree to the proposed transferee and shall simultaneously provide written notice of the prospective transfer, together with a copy of the proposed written agreement, to the United States and FDEP in accordance with Section XVI of this Consent Decree (Notices). Miami-Dade shall require, as a condition of any sale or transfer, that the purchaser or transferee agrees in writing to be bound by this Consent Decree and submit to the jurisdiction of the Court for its enforcement. Any attempt to transfer ownership or operation of any portion of the WCTS or of any WWTP without complying with this Paragraph constitutes a violation of this Consent Decree.

5.      Miami-Dade shall provide or otherwise make available a copy of this Consent Decree to all officers, employees, and agents whose duties might reasonably include compliance with any provision of this Consent Decree, as well as to any contractor retained to perform work required under this Consent Decree. Miami-Dade shall condition any such contract upon performance of the work in conformity with the terms of this Consent Decree.

6.      In any action to enforce this Consent Decree, Miami-Dade shall not raise as a defense the failure by any of its officers, directors, employees, agents, or contractors to take any actions necessary to comply with the provisions of this Consent Decree.

### III. OBJECTIVES

7.      The express purpose of the Parties entering into this Consent Decree is for Miami-Dade to take all necessary measures, consistent with the objectives of the CWA, to achieve full compliance with the CWA, the regulations promulgated thereunder, Fla. Admin. Code Rule 62-604, Sections 403.141 and 403.161 Fla. Stat., and the NPDES Permits, with the goal of

eliminating all SSOs and Prohibited Bypasses.  All plans, reports, construction, remedial

maintenance, and other obligations in this Consent Decree, and under any amendment to this

Consent Decree, shall have the objective of ensuring that Miami-Dade complies with the CWA,

Fla. Admin. Code Rule 62-604, Sections 403.141 and 403.161 Fla. Stat., all applicable federal

and state regulations, and the terms and conditions of the NPDES Permits.

## IV.  DEFINITIONS

8.       Terms used in this Consent Decree that are defined in the CWA or in regulations

promulgated pursuant to the CWA shall have the meanings assigned to them in the CWA, 33

U.S.C. §§ 1251 *et seq*., and regulations promulgated under the CWA, unless otherwise provided

in this Consent Decree.  Whenever the terms set forth below are used in this Consent Decree, the

following definitions shall apply:

(a).     "Building Backup" shall mean a wastewater release or backup into a

building that is caused by blockages, flow conditions, or other malfunctions in Miami-Dade's

WCTS.  A wastewater backup or release that is caused by blockages, flow conditions, or other

malfunctions of a Private Lateral is not a Building Backup.

(b).     "Calendar Quarter" shall mean the three (3) month periods ending on

March 31, June 30, September 30, and December 31.

(c).     "Calendar Year" shall mean the twelve (12) month period starting on

January 1 and ending on December 31.

(d).     "Certification" or "Certify" when used in this Consent Decree shall require

Miami-Dade to comply with Paragraph 16 of this Consent Decree.

(e).   "CMOM" or "Capacity, Management, Operations, and Maintenance" shall mean a program of accepted industry practices to properly manage, operate and maintain sanitary wastewater collection, transmission and treatment systems, investigate capacity-constrained areas of these systems, and respond to SSO events.

(f).   "Complaint" shall mean the complaint filed by the United States and the State in this action.

(g).   "Consent Decree" shall mean this Consent Decree and all appendices attached hereto (listed in Section XXV.).  In the event of a conflict between this document and any appendix, this document shall control.

(h).   "CWA" shall mean the Clean Water Act, as amended, 33 U.S.C. §§ 1251, *et seq.*

(i).   "Date of Entry" shall mean the date on which this Consent Decree is entered by the United States District Court for the Southern District of Florida.

(j).   "Date of Lodging" shall mean the date this Consent Decree is filed for lodging with the Clerk of the Court for the United States District Court for the Southern District of Florida.

(k).   "Day" shall mean a calendar day unless expressly stated to be a business day.  In computing any period of time under this Consent Decree, where the last day would fall on a Saturday, Sunday, or federal holiday, the period shall run until the close of business of the next business day.

(l).   "Defendant" shall mean Miami-Dade County, Florida and any successor thereto.

-12-

(m).    "Deliverable" shall mean any written document required to be prepared and/or submitted by or on behalf of Miami-Dade pursuant to this Consent Decree.

(n).    "DOJ" shall mean the United States Department of Justice.

(o).    "EPA" shall mean the United States Environmental Protection Agency and any of its successor departments or agencies.

(p).    "Effective Date" shall have the definition provided in Section XVII.

(q).    "Excessive Inflow / Infiltration" or "Excessive I/I" shall have the meaning provided in 40 C.F.R. § 35.2005(b)(16).

(r).    "FDEP" shall mean the Florida Department of Environmental Protection and any successor departments or agencies of the State.

(s).    "Force Main" shall mean any pipe that receives and conveys, under pressure, wastewater from the discharge side of a pump.  A Force Main is intended to convey wastewater under pressure.

(t).    "Gravity Sewer Line" or "Gravity Sewer" shall mean a pipe that receives, contains and conveys wastewater not normally under pressure, but is intended to flow unassisted under the influence of gravity.

(u).    "Infiltration" as defined by 40 C.F.R. § 35.2005(b)(20) shall mean water other than wastewater that enters the WCTS (including sewer service connections and foundation drains) from the ground through such means as defective pipes, pipe joints, connections, or manholes.

(v).    "Inflow" as defined by 40 C.F.R. § 35.2005(b)(21) shall mean water other than wastewater that enters the WCTS (including sewer service connections) from sources such

-13-

as, but not limited to, roof leaders, cellar drains, yard drains, area drains, drains from springs and swampy areas, manhole covers, cross connections between storm sewers and sanitary sewers, catch basins, cooling towers, storm water, surface runoff, street wash waters, or drainage.

(w).    "I/I" shall mean the total quantity of water from inflow, infiltration, and rainfall induced inflow and infiltration without distinguishing the source.

(x).    "Miami-Dade" shall mean the Miami-Dade County, Florida, including all of its departments, agencies, instrumentalities such as the Water and Sewer Department and the Department of Regulatory and Economic Resources, and any successor thereto.

(y).    "Month" shall mean shall mean one calendar month running from the numbered day to the same numbered day of the following calendar month, regardless of whether the particular month has 28, 29, 30 or 31 days.  In the event a triggered event would occur on a day of the month which does not exist (for example, on February 30), then the event shall be due on the first day of the following month (for example, March 1).

(z).    "NPDES" shall mean the National Pollutant Discharge Elimination System authorized under Section 402 of the CWA, 33 U.S.C. § 1342.

(aa).    "NPDES Permits" shall mean the most recently issued NPDES permits issued to Miami-Dade for its WWTPs.

(bb).    "Paragraph" shall mean a portion of this Consent Decree identified by an arabic numeral.

(cc).    "Parties" shall mean the United States of America on behalf of EPA, the State of Florida on behalf of FDEP, and Miami-Dade.

-14-

(dd).   "Plaintiffs" shall mean the United States of America on behalf of EPA and the State of Florida on behalf of FDEP.

(ee).   "Private Lateral" shall mean that portion of a sanitary sewer conveyance pipe that extends from a single-family, multi-family, apartment, or other dwelling unit or commercial or industrial structure to which wastewater service is or has been provided up to the property line of such structure.

(ff).   "Prohibited Bypass" shall mean the intentional diversion of waste streams from any portion of a treatment facility which is prohibited pursuant to the terms set forth at 40 C.F.R. § 122.41(m).

(gg).   "Public Document Repository" or "PDR" shall mean the Miami-Dade Water and Sewer Department located at 3071 SW 38th Avenue and and Miami-Dade Water and Sewer Department's website, miamidade.gov/water.

(hh).   "Pump Station" shall mean facilities comprised of pumps which pump wastewater to a higher hydraulic elevation, including all related electrical, mechanical, and structural systems necessary to the operation of that Pump Station.

(ii).   "Sanitary Sewer Overflow" or "SSO" shall mean any discharge of wastewater to waters of the United States or the State from Miami-Dade's WCTS through a point source not permitted in any NPDES permit, as well as any overflow, spill, or release of wastewater to public or private property from the WCTS that may not have reached waters of the United States or the State, including all Building Backups.

(jj).   "Section" shall mean a portion of this Consent Decree identified by a roman numeral.

-15-

(kk). "Sewer System" shall mean the WCTS and the WWTPs.

(ll). "State" shall mean the State of Florida, including all of its departments, agencies, and instrumentalities

(mm). "Subparagraph" shall mean a portion of a paragraph identified by lowercase letters.

(nn). "Timely" when applied to the submittal of a Deliverable shall mean submitted no later than the deadline established in this Consent Decree (or in a document approved pursuant to this Consent Decree) and containing all of the elements pertaining to the submittal as set forth in this Consent Decree (or in a document approved pursuant to this Consent Decree). "Timely," when applied to the implementation of any Work shall mean implemented no later than the deadline established in this Consent Decree (or in a document approved pursuant to this Consent Decree) and in accordance with the elements pertaining to such Work as set forth in this Consent Decree (or in a document approved pursuant to this Consent Decree).

(oo). "United States" shall mean the United States of America, acting on behalf of EPA, including its departments, agencies, and instrumentalities.

(pp). "Volume Sewer Customer" shall mean any entity or municipality serviced on a bulk basis (at a wholesale rate) by Miami-Dade within the territorial limits of Miami-Dade County, and currently includes the municipalities of Bal Harbour, Bay Harbor Islands, Coral Gables, Florida City, Homestead, Hialeah, Hialeah Gardens, Medley, Miami Beach, North Miami, Opa Locka, North Bay Village, North Miami Beach, Surfside and West Miami.

(qq). "Wastewater Collection and Transmission System" or "WCTS" shall mean the wastewater collection and transmission systems, including all pipes, Force Mains,

Gravity Sewer Lines, Pump Stations, manholes and appurtenances thereto, owned or operated by Miami-Dade designed to collect and convey municipal sewage (domestic, commercial and industrial) to Miami-Dade's WWTPs.

(rr).    "Wastewater Treatment Plant" or "WWTP" shall mean devices or systems used in the storage, treatment, recycling, and reclamation of municipal wastewater.  For purposes of this Consent Decree, this definition shall include all facilities owned, managed, operated, and maintained by Miami-Dade, including but not limited to the North District WWTP, the Central District WWTP, the South District WWTP, and all components of those plants.

(ss).    "Work" shall mean all activities Miami-Dade is required to perform under this Consent Decree.

## V.    REVIEW, APPROVAL AND IMPLEMENTATION OF DELIVERABLES

9.    <u>Public Document Repository</u>.  Within twenty-four (24) hours of the submission of a Deliverable to EPA and FDEP pursuant to Sections VI, VIII and IX of this Consent Decree, Miami-Dade shall make available a copy of each Deliverable in the Public Document Repository ("PDR").  The Miami-Dade Water and Sewer Department office located at 3071 SW 38th Avenue and the Miami-Dade Water and Sewer Department's website, miamidade.gov/water, shall constitute the PDR.  Miami-Dade shall bear the sole responsibility for depositing all Deliverables in the PDR.  Within seven (7) Days after EPA's approval, approval upon conditions, or modification by EPA pursuant to this Section, if revised, Miami-Dade shall place a copy of such revised version of the Deliverable in the PDR.  Such copy shall replace all previous copies of that Deliverable in the PDR, and shall remain in the PDR until termination of this Consent Decree.  In addition, Miami-Dade shall maintain in the PDR a listing of all Deliverables.

-17-

10.     EPA Action on Deliverables.  After review of any Deliverable that is required to be submitted pursuant to this Consent Decree, EPA, after consultation with FDEP, shall in writing:  (a) approve the submission; (b) approve part of the submission and disapprove the remainder; or (c) disapprove the submission. If EPA approves only in part or disapproves entirely a submission pursuant to Subparagraphs (b)-(c) above, EPA shall provide a written explanation of how the submission is inconsistent with the applicable criteria set forth in the relevant Sections of this Consent Decree.  EPA agrees to use best efforts to expeditiously review and comment on Deliverables.  If EPA issues written comments and decisions on any Deliverable more than sixty (60) Days after receipt of such Deliverable, any subsequent deadline or milestone that is dependent upon such comments or decisions shall be extended.  The length of the extension shall be determined by calculating the number of Days between EPA's receipt of the Deliverable and the date of Miami-Dade's receipt of EPA's written response, less sixty (60) Days.  Within thirty (30) Days of the date that Miami-Dade knows or should know of a deadline or milestone that Miami-Dade believes is extended under this Paragraph, Miami-Dade shall inform EPA, in writing, of its belief and the amount of time Miami-Dade believes the deadlines or milestones are extended.  If EPA disagrees with Miami-Dade's determination that a deadline is dependent upon such comments or decisions, EPA shall inform Miami-Dade in writing. Miami-Dade may invoke Dispute Resolution pursuant to Section XII (Dispute Resolution) regarding EPA's conclusion regarding whether a deadline is dependent upon such comments or decisions.

11.     Approved Deliverables.  If a Deliverable is approved by EPA in its entirety pursuant to Subparagraph 10.(a)., Miami-Dade shall take all actions required by the Deliverable

in accordance with the schedules and requirements of the Deliverable as approved.   If the Deliverable is approved only in part pursuant to Subparagraph 10.(b)., Miami-Dade shall, upon written direction from EPA, after consultation by EPA with FDEP, take all actions required by the approved plan, report, or other item that EPA, after consultation by EPA with FDEP, determines are technically severable from any disapproved portions and not directly dependent upon an unapproved portion of the Deliverable, subject to Miami-Dade's right to dispute only the specified conditions or the disapproved portions, under Section XII of this Consent Decree (Dispute Resolution).  Following EPA approval of any Deliverable or portion thereof, such Deliverable or portion thereof so approved shall be incorporated into and become enforceable under this Consent Decree, subject to Miami-Dade's right to dispute under Section XII of this Consent Decree (Dispute Resolution).

12.     Disapproved Deliverables.  If the Deliverable is disapproved in whole or in part pursuant to Subparagraph 10.(b). or (c)., Miami-Dade shall, within sixty (60) Days or such other time as EPA and Miami-Dade agree to in writing, correct all identified deficiencies and resubmit to EPA the Deliverable, or disapproved portion thereof, for approval, in accordance with Paragraphs 10 and 11, subject to Miami-Dade's right to dispute under Section XII of this Consent Decree (Dispute Resolution).  If the resubmission is approved in whole or in part by EPA, Miami-Dade shall proceed in accordance with Paragraph 11.

13.     Stipulated Penalties Accruing.  Any stipulated penalties applicable to the original Deliverable, as provided in Section X of this Consent Decree, shall accrue during the sixty (60)-Day period or other specified period, but shall not be payable unless the resubmitted Deliverable is not Timely or is disapproved in whole or in part; provided that, if the original submission was

-19-

so deficient as to constitute a material breach of Miami-Dade's obligations under this Consent Decree, the stipulated penalties applicable to the original submission shall be due and payable notwithstanding any subsequent resubmissions.

14.     Resubmitted Deliverable.  If a resubmitted Deliverable, or portion thereof, is disapproved in whole or in part, EPA, after consultation with FDEP, may again require Miami-Dade to correct any deficiencies, in accordance with Paragraph 12, or may itself correct any deficiencies, subject to Miami-Dade's right to invoke Dispute Resolution under Section XII of this Consent Decree and the right of EPA to seek stipulated penalties as provided in preceding Paragraph 13.  Upon EPA's correction of any deficiencies, such resubmitted Deliverable or portion thereof  will be incorporated into and become enforceable under this Consent Decree and shall be implemented by Miami-Dade according to the approved schedule subject to Miami-Dade's right to invoke Dispute Resolution.

15.     Revisions to Deliverables.  The Parties recognize that Miami-Dade may need or want to revise certain Deliverables during the term of this Consent Decree.  Any such revision shall be considered non-material change to this Consent Decree for purposes of Section XIX (Modification).  Miami-Dade must obtain EPA's prior written approval of any revision to the substance of a Deliverable and shall place copies of any such revised Deliverable in the PDR in accordance with the provisions of Paragraph 9.  Miami-Dade may revise the form of any Deliverable without consulting EPA and shall place a copy of any such revised Deliverable in the PDR within seven (7) Days after making such revision.

-20-

16.     <u>Certification</u>.  In all Deliverables, notices, documents or reports submitted to the United States and State pursuant to this Consent Decree, Miami-Dade shall, by a Miami-Dade senior management official, sign and certify such notices, documents and reports as follows:

> *I certify under penalty of law that this document and all attachments were prepared under my direction or supervision in accordance with a system designed to assure that qualified personnel properly gather and evaluate the information submitted.  Based on my inquiry of the person or persons who manage the system, or those persons directly responsible for gathering such information, the information submitted is, to the best of my knowledge and belief, true, accurate and complete.  I am aware that there are significant penalties for submitting false information, including the possibility of fine and imprisonment for knowing violations.*

## VI.  **COMPLIANCE REQUIREMENTS**

17.     <u>Obligation to Perform Work</u>.  Upon the Effective Date of this Consent Decree, Miami-Dade shall implement the Work pursuant to this Consent Decree.  Miami-Dade is responsible for ensuring that any contractors hired to perform Work pursuant to this Consent Decree comply with all applicable laws and with this Consent Decree.  All Work shall be performed using sound engineering practices, which may include appropriate provisions of the most recent edition of the following publications:  EPA's Handbook: *Sewer System Infrastructure Analysis and Rehabilitation*, EPA/625/6-91/030, 1991; EPA's Handbook: *Condition Assessment of Wastewater Collection Systems (State of Technology Review Report)*, EPA/600/R-09/049, May 2009; EPA's Handbook: *State of Technology Report for Force Main Rehabilitation*, EPA/600/R-10/044, March 2010; *Existing Sewer Evaluation and Rehabilitation*,

-21-

WEF Manual of Practice No. FD-6, 1994; *Design of Wastewater and Stormwater Pumping Stations*, WEF Manual of Practice No. FD-4; and Fla. Admin. Code. Rule 62-604; *Gravity Sanitary Sewer Design and Construction*, WEF Manual of Practice No. FD-5, 2007; *Wastewater Collection Systems Management*, WEF Manual of Practice No. FD-7, 2009; and *Recommended Standards for Wastewater Facilities*, Health Education Services (a Division of Health Research, Inc.), 2004.

     18.    Continuation of Capacity, Management, Operations and Maintenance ("CMOM") Programs of the First Partial Consent Decree and Second and the Final Partial Consent Decree.

     (a).    Adequate Pumping, Transmission and Treatment Capacity Program. Pursuant to Paragraph 16.C. of the First Partial Consent Decree (as amended by Paragraph 23 of the Second and Final Partial Consent Decree), Miami-Dade developed and implemented a program to ensure adequate transmission capacity for its Pump Stations and adequate treatment capacity for its WWTPs. Miami-Dade shall ensure adequate transmission and treatment capacity under the conditions provided for in Appendix A of this Consent Decree, attached hereto and incorporated herein. Within one hundred-eighty (180) Days of the Effective Date of this Consent Decree, Miami-Dade shall amend Section 24-42.3 of the Code of Miami-Dade to incorporate the criteria in Appendix A.

     (b).    Pump Station Remote Monitoring Program. Pursuant to Paragraph 14 of the Second and Final Partial Consent Decree, Miami-Dade developed and implemented a Supervisory Control and Data Acquisition ("SCADA") program for the installation and operation of remote monitoring equipment in all Pump Stations within the WCTS. Miami-Dade shall