In the event that full cash payment to the United States is not made within thirty (30) Days of the Effective Date of this Consent Decree, the County shall pay to the United States interest on the balance due from the original due date to the date of payment, at the rate calculated pursuant to 28 U.S.C. § 1961.

22.  Miami-Dade shall pay to FDEP fifty percent (50%) of the civil penalty due by check payable to the "Florida Department of Environmental Protection." The check shall reference the case name and include a notation to the "Ecosystem Restoration Trust Fund" and shall be sent to:

> Florida Department of Environmental Protection
> Southeast District
> Attn: Compliance/Enforcement Section
> 400 N. Congress Ave.
> West Palm Beach, FL 33401

### VIII. SUPPLEMENTAL ENVIRONMENTAL PROJECT

23.  Miami-Dade shall satisfactorily implement and complete a Supplemental Environmental Project ("SEP") in accordance with this Section VIII and Appendix E of this Consent Decree. The SEP shall be completed in accordance with the schedule set forth in Appendix E.

24.  The SEP shall *[general description and purpose of the SEP]*. Miami-Dade may use contractors or consultants in planning and implementing the SEP.

25.  With regard to the SEP, Miami-Dade certifies the truth and accuracy of each of the following:

(a). That all cost information provided to EPA in connection with EPA's approval of the SEP is complete and accurate and that Miami-Dade in good faith estimates that the cost to implement the SEP[, exclusive of _____ costs,] is $_____.

(b). That, as of the date of executing this Consent Decree, Miami-Dade is not required to perform or develop the SEP by any federal, state, or local law or regulation and is not required to perform or develop the SEP by agreement, grant, or as injunctive relief awarded in any other action in any forum.

(c). That Miami-Dade is not a party to any open federal financial assistance transaction that is funding or could be used to fund the same activity as the SEP, and that there is no such open federal financial transaction that is funding or could be used to fund the same activity as the SEP, nor has the same activity been described in an unsuccessful federal financial assistant transaction proposal submitted to EPA within two (2) years of the date of Miami-Dade's execution of this Consent Decree (unless the project was barred from funding as statutorily ineligible). For purposes of this certification, the term "open federal financial assistance transaction" refers to a grant, cooperative agreement, loan, federally-guaranteed loan guarantee or other mechanism for providing federal financial assistance whose performance period has not yet expired.

(d). That the SEP is not a project that Miami-Dade was planning or intending to construct, perform, or implement other than in settlement of the claims resolved in this Consent Decree.

(e). That Miami-Dade has not received and will not receive credit for the SEP in any other enforcement action.

    (f). That Miami-Dade will not receive any reimbursement for any portion of the SEP from any other person.

  26. <u>SEP Completion Report</u>.  Within thirty (30) Days after the date set for completion of the SEP, Miami-Dade shall submit a SEP Completion Report to the EPA and FDEP for review and comment.  The SEP Completion Report shall contain all of the following information:

    (a). A detailed description of the SEP as implemented.

    (b). A description of any problems encountered in completing the SEP and the solutions thereto.

    (c). An itemized list of all eligible SEP costs expended.

    (d). Certification that the SEP has been fully implemented pursuant to the provisions of this Consent Decree.

    (e). A description of the environmental and public health benefits resulting from implementation of the SEP (with a quantification of the benefits and pollutant reductions, if feasible).

  27. EPA may, in its sole discretion, require information in addition to that described in the preceding Paragraph, in order to evaluate Miami-Dade's SEP Completion Report.

  28. After receiving the SEP Completion Report, EPA shall notify Miami-Dade whether or not Miami-Dade has satisfactorily completed the SEP.  If Miami-Dade has not completed the SEP in accordance with this Consent Decree, stipulated penalties may be assessed under Section X of this Consent Decree.

29. Disputes concerning the satisfactory performance of the SEP and the amount of eligible SEP costs may be resolved under Section XII of this Consent Decree (Dispute Resolution).

30. Each submission required under this Section shall be signed by an official with knowledge of the SEP and shall bear the certification language set forth in Paragraph 16.

31. Any public statement, oral or written, in print, film, or other media, made by Miami-Dade making reference to the SEP under this Consent Decree shall include the following language: "This project was undertaken in connection with the settlement of an enforcement action, United States et al. v. Miami-Dade County, taken on behalf of the U.S. Environmental Protection Agency and the Florida Department of Environmental Protection under the Clean Water Act."

## IX. REPORTING REQUIREMENTS

32. Quarterly Reports. Beginning one (1) Month after the first Calendar Quarter following the Effective Date of this Consent Decree, and one (1) Month after each Calendar Quarter thereafter until termination of the Consent Decree, Miami-Dade shall submit to EPA and FDEP for review and comment a Quarterly Report. Such Quarterly Reports shall include the date, time, location, source, estimated duration, estimated volume, receiving water (if any), and cause of all SSOs occurring in the previous Calendar Quarter. In reporting such data, Miami-Dade shall provide the information in a tabulated electronic format (*e.g.*, Excel spreadsheet) as it deems appropriate.

33. Semi-Annual Reports. Beginning one (1) Month after the first (1st) two (2) Calendar Quarters following the Effective Date of this Consent Decree, and one (1) Month after

each subsequent two (2) Calendar Quarters until termination of the Consent Decree, Miami-Dade shall submit to EPA and FDEP for review and comment a Semi-Annual Report. Six (6) years from the Effective Date of this Consent Decree and each subsequent year until termination, the Parties agree to consider whether to discontinue the Semi-Annual Reports. If the Parties agree to discontinue the Semi-Annual Reports, such modification shall be considered a non-material change to this Consent Decree pursuant to Section XIX (Modification); and the information required in Subparagraphs 33.(a). and (b). below shall then be included in each Annual Report submitted pursuant to Paragraph 34 and shall cover the applicable Calendar Year rather than two (2) Calendar Quarters. Each Semi-Annual shall include, at a minimum:

(a). A description of projects and activities completed and milestones achieved during the previous two (2) Calendar Quarters pursuant to the requirements of this Consent Decree, in Gantt chart or similar format, including a description of the status of compliance or non-compliance with the requirements of this Consent Decree and, if applicable, the reasons for non-compliance. If any non-compliance cannot be fully explained at the time the report is due, Miami-Dade shall include a statement to that effect in the report. Miami-Dade shall investigate to determine the cause of the non-compliance and then shall submit an amendment to the report, including a full explanation of the cause of the non-compliance, within thirty (30) Days after submission of the report.

(b). A summary of significant projects and activities anticipated to be performed, and milestones anticipated to be achieved, in the successive two (2) Calendar Quarters to comply with the requirements of this Consent Decree, in Gantt chart or similar format.

(c). Any additional information Miami-Dade determines is appropriate to demonstrate that Miami-Dade is implementing the remedial actions required under this Consent Decree in an adequate and timely manner.

34. <u>Annual Reports</u>. Beginning two (2) Months after the first (1st) full Calendar Year following the Effective Date of this Consent Decree, and two (2) Months after each subsequent Calendar Year until termination of this Consent Decree, Miami-Dade shall submit to EPA and FDEP for review and comment an Annual Report. Each Annual Report shall cover the most recent applicable Calendar Year and shall include, at a minimum:

(a). A narrative summary of progress made, including key accomplishments and significant activities, under the CMOM Programs implemented or modified pursuant to this Consent Decree for the most recent Calendar Year.

(b). A trends analysis of the number, volume, average duration, and cause of the County's SSOs for the previous two (2) Calendar Years.

35. Except as otherwise provided in the SORP, whenever any violation of this Consent Decree or any other event affecting Miami-Dade's performance under this Consent Decree or its NPDES Permits may pose an immediate threat to the public health or welfare or the environment, Miami-Dade shall notify EPA and FDEP orally or by electronic or facsimile transmission as soon as possible, but no later than twenty-four (24) hours after Miami-Dade first knew of the violation or event.

36. All reports shall be submitted to the persons designated in Section XVI of this Consent Decree (Notices) for EPA and FDEP and shall be certified pursuant to Paragraph 16 of this Consent Decree. The certification requirement in Paragraph 16 does not apply to emergency

or similar notifications where compliance would be impractical. In addition, a copy of all reports submitted pursuant to this Section (IX. Reporting Requirements) shall also be made available to the public in the PDR.

37. Compliance with this Section does not relieve Miami-Dade of any other reporting obligations required by the CWA, Florida law, implementing regulations, or by any other Federal, state, or local law, regulation, permit, or other requirement, including the NPDES Permits.

38. Notification to EPA or FDEP pursuant to this Section of an anticipated delay shall not by itself excuse the delay or otherwise satisfy the notification requirements set forth in Section XI (Force Majeure).

39. Any information provided pursuant to this Consent Decree may be used by the United States and the State in any proceeding to enforce the provisions of this Consent Decree and as otherwise permitted by law.

## X. STIPULATED PENALTIES

40. Miami-Dade shall be liable for stipulated penalties to the United States and FDEP for violations of this Consent Decree as specified below, unless excused under Section XI (Force Majeure). A violation includes failing to perform any obligation required by the terms of this Consent Decree, including any work plan or schedule approved under this Consent Decree, according to all applicable requirements of this Consent Decree and within the specified time schedules established by or approved under this Consent Decree.

41.     If Miami-Dade fails to pay the civil penalty required to be paid under Section VII of this Consent Decree (Civil Penalty) when due, Miami-Dade shall pay a stipulated penalty of $1,000 per day for each day that the payment is late.

42.     The following stipulated penalties shall accrue for each violation identified below:

    a.     SSOs Reaching Waters of the United States.

    (i). For each SSO reaching waters of the United States less than or equal to 25,000 gallons, a stipulated penalty of $1,000 may be assessed.

    (ii) For each SSO reaching waters of the United greater than 25,000 gallons but less than or equal to 100,000 gallons, a stipulated penalty of $2,500 may be assessed.

    (iii) For each SSO reaching waters of the United greater than 100,000 gallons, a stipulated penalty of $5,000 may be assessed.

    b.     Failure to Timely Submit Deliverable. For each day Miami-Dade fails to Timely submit any Deliverable, a stipulated penalty for each such Deliverable may be assessed as follows:

| Period of Noncompliance: | Penalty Per Deliverable Per Day: |
|---|---|
| One (1) to thirty (30) days | $1,000 |
| More than thirty (30) days | $2,000 |

    c.     Failure to Meet Deadlines in Appendix D. For each day Miami-Dade fails to complete the rehabilitation projects pursuant to and in accordance with the final deadlines set forth in Appendix D, daily stipulated penalties may be assessed for each missed deadline as follows:

Period of Noncompliance:                                                          Penalty Per Violation Per Day:

-69-

| | |
|---|---|
| One (1) to fourteen (14) days | $500 |
| Fifteen (15) to thirty (30) days | $1,000 |
| Thirty-one (31) to sixty (60) days | $1,500 |
| Sixty-one (61) to one hundred-eighty (180) days | $2,000 |
| More than one hundred-eighty (180) days | $2,500 |

        d.     <u>Failure to Timely Implement SEP Milestones</u>.  For each day Miami-Dade fails to Timely implement a SEP milestone set forth in Section VIII or <u>Appendix E</u>, daily stipulated penalties may be assessed as follows:

| Period of Noncompliance: | Penalty Per Violation Per Day: |
|---|---|
| 1 - 30 days | $1,000 |
| More than 30 days | $2,000 |

        e.     <u>Failure to Satisfactorily Complete SEP</u>.  After receiving the SEP Completion Report, in the event EPA notifies Miami-Dade that Miami-Dade has failed to satisfactorily complete the SEP in accordance with the terms of this Consent Decree as described in Section VIII and <u>Appendix C</u> (including the allowable expenditures for the SEP), a stipulated penalty of $_____ may be assessed if Miami-Dade does not cure the deficiencies identified in EPA/FDEP's notice within ninety (90) Days after receiving such notice.  Notwithstanding the foregoing, if EPA determines that Miami-Dade has made good faith efforts to satisfactorily complete the SEP and has certified, with supporting documentation, that at least ninety (90) percent of the required amount of money has been spent on the SEP, Miami-Dade shall not be liable for any stipulated penalty.

43. Stipulated penalties under this Section shall begin to accrue on the day after performance is due or on the day a violation occurs, whichever is applicable, and shall continue to accrue until performance is satisfactorily completed or until the violation ceases. Stipulated penalties shall accrue simultaneously for separate violations of this Consent Decree.

44. Miami-Dade shall pay stipulated penalties to the United States and FDEP within thirty (30) Days of a written demand by EPA. Miami-Dade shall pay fifty percent (50%) of the total stipulated penalty amount due to the United States and fifty percent (50%) to FDEP. If FDEP waives its share of a stipulated penalty, the entire amount shall be paid to the United States.

45. The United States and FDEP may in the unreviewable exercise of its discretion, reduce or waive stipulated penalties otherwise due it under this Consent Decree.

46. Stipulated penalties shall continue to accrue as provided in Paragraph 43, during any Dispute Resolution, but need not be paid until the following:

    (a). If the dispute is resolved by agreement or by a decision of EPA that is not appealed to the Court, Miami-Dade shall pay accrued penalties determined to be owing, together with interest, to the United States and FDEP within thirty (30) Days of the effective date of the agreement or the receipt of EPA's decision or order.

    (b). If the dispute is appealed to the Court and the United States prevails in whole or in part, Miami-Dade shall pay all accrued penalties determined by the Court to be owed, together with interest, within sixty (60) Days of receiving the Court's decision or order, except as provided in Subparagraph (c)., below.

-71-

(c). If the District Court's decision is appealed, Miami-Dade shall pay all accrued penalties determined to be owed, together with interest, within fifteen (15) Days of receiving the final appellate court decision.

47. Miami-Dade shall pay stipulated penalties owing to the United States in the manner set forth and with the confirmation notices required by Paragraph 21, except that the transmittal letter shall state that the payment is for stipulated penalties and shall state for which violation(s) the penalties are being paid. Miami-Dade shall pay stipulated penalties owing to FDEP in the manner set forth in Paragraph 22.

48. If Miami-Dade fails to pay stipulated penalties according to the terms of this Consent Decree, Miami-Dade shall be liable for interest on such penalties, as provided for in 28 U.S.C.§ 1961, accruing as of the date payment became due. Nothing in this Paragraph shall be construed to limit the United States or the State from seeking any remedy otherwise provided by law for Miami-Dade's failure to pay any stipulated penalties.

49. Subject to the provisions of Section XIV of this Consent Decree (Effect of Settlement/Reservation of Rights), the stipulated penalties provided for in this Consent Decree shall be in addition to any other rights, remedies, or sanctions available to the United States and the State for Miami-Dade's violation of this Consent Decree or applicable law. Where a violation of this Consent Decree is also a violation of the Clean Water Act and/or Florida law, Miami-Dade may request EPA, FDEP and/or the Court to take into account any stipulated penalties previously paid when imposing any statutory penalties for such violation.

## XI. FORCE MAJEURE

50. "Force majeure," for purposes of this Consent Decree, is defined as any event arising from causes beyond the control of Miami-Dade, of any entity controlled by Miami-Dade, or of Miami-Dade's consultants and contractors, that delays or prevents the performance of any obligation under this Consent Decree despite Miami-Dade's best efforts to fulfill the obligation. The requirement that Miami-Dade exercise "best efforts to fulfill the obligation" includes using best efforts to anticipate any potential force majeure event and best efforts to address the effects of any such event (a) as it is occurring and (b) after it has occurred to prevent or minimize any resulting delay to the greatest extent possible. "Force majeure" does not include Miami-Dade's financial inability to perform any obligation under this Consent Decree. Where any compliance obligation under this Consent Decree requires Miami-Dade to obtain a Federal, State, or local permit or approval, Miami-Dade should submit timely and complete applications and take all other actions required by law to obtain all such permits or approvals. Miami-Dade may seek relief under the provisions of this Section XI of this Consent Decree (Force Majeure) for any delay in the performance of any such obligation resulting from a failure to obtain, or a delay in obtaining, any permit or approval required to fulfill such obligation to the extent that Miami-Dade has submitted timely and complete applications and has taken all other actions required by law to obtain all such permits or approvals.

51. If any event occurs or has occurred that may delay the performance of any obligation under this Consent Decree, whether or not caused by a force majeure event, Miami-Dade shall provide notice orally or by electronic or facsimile transmission to EPA and FDEP as set forth in Section XVI (Notices), within seventy-two (72) hours of when Miami-Dade first

-73-

knew that the event might cause a delay. Within fourteen (14) Days thereafter, Miami-Dade shall provide in writing to EPA and FDEP an explanation and description of the reasons for the delay; the anticipated duration of the delay; all actions taken or to be taken to prevent or minimize the delay; a schedule for implementation of any measures to be taken to prevent or mitigate the delay or the effect of the delay; Miami-Dade's rationale for attributing such delay to a force majeure event if it intends to assert such a claim; and a statement as to whether, in the opinion of Miami-Dade, such event may cause or contribute to an endangerment to public health, welfare or the environment. Miami-Dade shall include with any notice all available documentation supporting the claim that the delay was attributable to a force majeure event. Failure to comply with the above requirements shall preclude Miami-Dade from asserting any claim of force majeure for that event for the period of time of such failure to comply, and for any additional delay caused by such failure. Miami-Dade shall be deemed to know of any circumstance of which Miami-Dade, any entity controlled by Miami-Dade, or Miami-Dade's contractors knew or should have known.

52. If EPA, after a reasonable opportunity for review and comment by FDEP, agrees that the delay or anticipated delay is attributable to a force majeure event, the time for performance of the obligations under this Consent Decree that are affected by the force majeure event will be extended by EPA, after a reasonable opportunity for review and comment by FDEP, for such time as is necessary to complete those obligations. An extension of the time for performance of the obligations affected by the force majeure event shall not, of itself, extend the time for performance of any other obligation. EPA will notify Miami-Dade in writing of the length of the extension, if any, for performance of the obligations affected by the force majeure event.

53. If EPA, after a reasonable opportunity for review and comment by FDEP, does not agree that the delay or anticipated delay has been or will be caused by a force majeure event, EPA will notify Miami-Dade in writing of its decision.

54. If Miami-Dade elects to invoke the dispute resolution procedures set forth in Section XII (Dispute Resolution), it shall do so no later than fifteen (15) Days after receipt of EPA's notice. In any such proceeding, Miami-Dade shall have the burden of demonstrating by a preponderance of the evidence that the delay or anticipated delay has been or will be caused by a force majeure event, that the duration of the delay or the extension sought was or will be warranted under the circumstances, that best efforts were exercised to avoid and mitigate the effects of the delay, and that Miami-Dade complied with the requirements of Paragraphs 50 and 53 above. If Miami-Dade carries this burden, the delay at issue shall be deemed not to be a violation by Miami-Dade of the affected obligation of this Consent Decree identified to EPA and the Court.

## XII. DISPUTE RESOLUTION

55. Unless otherwise expressly provided for in this Consent Decree, the dispute resolution procedures of this Section shall be the exclusive mechanism to resolve disputes arising under or with respect to this Consent Decree. Miami-Dade's failure to seek resolution of a dispute under this Section shall preclude Miami-Dade from raising any such issue as a defense to an action by the United States or the State to enforce any obligation of Miami-Dade arising under this Consent Decree.

56. <u>Informal Dispute Resolution</u>. Any dispute subject to Dispute Resolution under this Consent Decree shall first be the subject of informal negotiations. The dispute shall be