# EXHIBIT 3



**COFFEY BURLINGTON**
Email: pschwiep@coffeyburlington.com

www.coffeyburlington.com

OFFICE IN THE GROVE, PENTHOUSE
2699 SOUTH BAYSHORE DRIVE
MIAMI, FLORIDA 33133
T: 305.858.2900  F: 305.858.5261

**October 8, 2012**

**Biscayne Bay Waterkeeper**
465 Ocean Drive, #417
Miami Beach, FL 33139
305-934-8844
www.bbwk.org

and

**Judi Koslen**
251 Galen Dr., Apt. 116
Key Biscayne, FL 33149
(305) 361-7057

**<u>CERTIFIED MAIL/RETURN RECEIPT REQUESTED</u>**

TO:  Miami-Dade County c/o the Honorable Carlos A. Gimenez,
Mayor of Miami-Dade County

The Board of County Commissioners

John Renfrow, Director, Miami-Dade County Water and Sewer District

**PLEASE NOTE**: THIS IS A NOTICE OF INTENT TO SUE UNDER 33 U.S.C. § 1365 OF THE FEDERAL CLEAN WATER ACT. PURSUANT TO 40 C.F.R. PART 135, YOU ARE BEING GIVEN NOTICE.

Copies have been sent by certified mail, return receipt requested to:

The Honorable Lisa Jackson, Administrator
U.S. Environmental Protection Agency
Environmental Protection Agency
Ariel Rios Building
1200 Pennsylvania Avenue, N.W.
Washington, DC 20460

Notice of Intent to Sue
October 8, 2012
Page 2

Ms. Gwen Fleming
Regional Administrator, Region IV
U.S. Environmental Protection Agency
61 Forsyth Street, SW
Atlanta, GA 30303-8960

Herschel T. Vinyard, Jr.
Secretary, Florida Department of Environmental Protection
3900 Commonwealth Boulevard M.S. 49
Tallahassee, Florida 32399

John Renfrow, Director
Miami-Dade Water and Sewer Department
3071 S.W. 38th Ave.
Miami, FL 33146

Pursuant to Section 505(b) of the federal Clean Water Act (the Act or CWA), 33 U.S.C. § 1365(b), this is to put you on notice that Miami-Dade County is discharging pollutants into the navigable waters of the United States without permits authorizing such discharges and in violation of the County's National Pollutant Discharge Elimination System (NPDES) permits for the North and Central Publicly-Owned Wastewater Treatment Plants. As set forth more fully below, North and Central plant effluent violations, system wide sanitary sewer overflows, the failure to properly operate and maintain the three sewage treatment plants and the appurtenances to those plants, the condition of the 54 inch forcemain pipe under Biscayne Bay and the ocean discharges from the Central and North Plants, violate the Clean Water Act, 40 C.F.R. Section 122.41(e), the NPDES permits for the North and Central Plants, and two existing federal consent decrees. Accordingly, at the end of the 60-day Notice Period, Biscayne Bay Waterkeeper and Ms. Koslen intend to initiate a citizens' suit against Miami-Dade County pursuant to Section 505(a)(1) of the Clean Water Act.

## Sanitary Sewer Overflows – Violations of the Clean Water Act

Over the past five years, the County has discharged raw sewage from Sanitary Sewer Overflow (SSO) events occurring throughout the Miami-Dade sewer system and overflows and spills at the County's North and Central sewage treatment plant, as set forth more fully below. These discharges violate the federal Clean Water Act, 33 U.S.C. § 1311(a), which provides that "[e]xcept in compliance with this section and sections 1312, 1316, 1317, 1328, 1342, and 1344 of this title, the discharge of any pollutant by any person shall be unlawful." The actions of the County, including the Water and Sewer Department (WASD), in discharging pollutants into the navigable waters from point sources without permits or in violation of permits, as defined in 33 U.S.C. § 1362(12)(A), violates the Act.

Notice of Intent to Sue
October 8, 2012
Page 3

On a periodic and regular basis for at least the past 5 years and as recently as August 13, 2012, the sanitary sewer conveyance system owned and operated by Miami-Dade County has overflowed raw sewage into the navigable waters of the United States from openings in the sewer systems (SSOs), including, but not limited to, force main malfunctions, line breaks, pump station overflows, etc. Such raw sewage overflows are a direct violation of the Act, a threat to public health and safety, and cause injury-in-fact to the recreational and aesthetic interests of the group and individual giving notice in this letter as well as to the citizens of Miami-Dade County and its visitors as a whole.

Over the past two-years alone, SSOs from the Miami-Dade sewer system have discharged tens of millions of gallons of raw sewage, much of which ended up polluting Miami waterways. See the Warning Letters attached hereto as Ex. A and incorporated herein issued by the Florida Department of Environmental Protection (FDEP) to Miami-Dade County. See also, <u>Miami Herald</u>, Rabin, C. and Morgan, C, "Miami-Dade's leaky pipes: More than 47 million gallons of waste spilled in past two years", May 14, 2012, <u>http://www.miamiherald.com/2012/05/14/2799249/miami-dades-leaky-pipes-more-than.html</u> <u>Miami-Dade County's antiquated sewer system has ruptured at least 65 times over the past two years, spewing more than 47 million gallons of untreated human waste into waterways and streets" across Miami-Dade County</u>. A single sewage spill in 2010, for example, resulted in the discharge of 20 million gallons of raw sewage into the Biscayne Canal, a navigable water of the U.S. See pages 24-25 (including photo), Miami-Dade County July 2012 Infrastructure Report, attached hereto and incorporated herein as Ex. B.

Miami-Dade County's Water and Sewer Department is required to keep records of the date, location and duration of each unpermitted sanitary sewer overflow. WASD is also required to provide that information to the United States Environmental Protection Agency (U.S. EPA) and the FDEP. The specific information of each and every SSO over the past five years is in the possession of the WASD, and therefore the County is on actual notice of each such activity that constitutes violation of the Clean Water Act, the location of the violations, and the dates of the violations. Each report to U.S. EPA or FDEP of sanitary sewer overflows dating back five-years from the date of this notice letter is specifically incorporated by reference herein.

More specifically, but without limitation, each and every SSO event identified in the Miami-Dade Water and Sewer Department document entitled, "<u>Miami-Dade SSOs from 24-hour emails</u>," attached hereto as Ex. C, and each and every SSO event identified or described in the 2011 Miami-Dade CMOM Self-Assessment, attached hereto as Ex. D, is specifically incorporated herein by reference.

In addition, you are put on notice of the illegality of all SSO events occurring over the past 5-years of which you have actual knowledge, whether or not they have been included on Exs. A, B, C, D, or any other specific Exhibit attached hereto and incorporated herein. Each and every receiving water into which raw sewage from an SSO flowed is a navigable water of the US. These specific receiving waters are identified in Exs. A, B, C, and D and as further described

Notice of Intent to Sue
October 8, 2012
Page 4

in the documents filed by Miami-Dade County with the U.S. EPA and the FDEP. Regardless whether these specifically identified SSOs reached the navigable waters of the U.S., the discharge of raw sewage from the Miami-Dade sewers prior to being properly treated at one of the three sewage treatment plants violates the Clean Water Act, its implementing regulations, or NPDES permits for the plants of which the SSO is appurtenant.

For example: Central Plant, Permit No. FL0024805, issued April 16, 1999 (now expired and under EPA review), Part II, Section B. Operation and Maintenance of Pollution Controls, Para. 1 provides that "[t]he permittee shall at all times properly operate and maintain all facilities and systems of treatment and control (and related appurtenances) which are installed or used by the permittee to achieve compliance with the conditions of this permit." This same or a similar provision is included in the North Plant NPDES permit. See North Permit, FL 0032182, Section IX, General Conditions, Para. 7 ("[t]he Permittee shall at all times properly operate and maintain the facility and systems of treatment and control, and related appurtenances, that are installed and used by the Permittee to achieve compliance with the conditions of this permit.") All SSOs that occurred in the Miami-Dade sewer system over the past 5-years which were appurtenant to the North or the Central plants violated the proper operation and maintenance provision of the plant's NPDES permit, whether or not the raw sewage overflow ever reached the navigable waters of the US.

Additionally, the South Plant's FDEP operating permit also requires WASD to properly operate and maintain the sewage collection system appurtenant to that facility. Unpermitted discharges from the appurtenant structures to the South Plant also violate the Clean Water Act and its implementing regulations.

A number of these SSO events reported by Miami-Dade County to FDEP are included in a draft Consent Order sent by the FDEP to Miami Dade County on December 10, 2010, attached hereto as Ex. E and incorporated herein. That Consent Order was never signed by Miami-Dade County. The U.S. EPA has been negotiating with Miami-Dade County for some time over a draft consent decree to take the place of two existing Consent Decrees that are currently operative in federal court in the Southern District of Florida. A copy of a recent draft U.S. EPA consent decree is attached hereto as Ex. F. The January 1994 First Partial Consent Decree is attached hereto as Ex. G and the September 1995 Second And Final Partial Consent Decree is attached hereto as Ex. H. Neither of these two existing Consent Decrees are effectively preventing Miami-Dade County from violating the federal Clean Water Act and, notwithstanding their knowledge of the violations, neither the FDEP nor the U.S. EPA have diligently prosecuted the County for its widespread Clean Water Act violations over the past five years. As a consequence, citizens of Miami-Dade County are taking this action to ensure the County comes into compliance and to ensure the County *maintains* compliance with the Clean Water Act.

These sanitary sewer overflows have occurred in the past at various locations and are likely to recur in the future because of the failure of the County to properly operate and maintain its sewer system, which itself is a violation of the Clean Water Act and, more specifically, 40

Notice of Intent to Sue
October 8, 2012
Page 5

C.F.R. § 122.41(e). All publicly owned treatment works (POTWs) must provide at least secondary treatment, as defined by U.S. EPA and its regulations, for all sewage entering the sewer system before discharge. Sanitary sewer overflows, being the discharge of raw, untreated sewage from the sewage conveyance system before treatment occurs, are a violation of the Act. It is unlawful for the owner or operator of a sewer system to discharge sewage without a state or federal permit. See CWA Section 301(a), 33 U.S.C. § 1311(a). These reports of SSOs also allegedly include SSOs where raw sewage enters or impacts private property, occupied residences and businesses in Miami-Dade County. Raw sewage overflows to inhabited structures result in threats to public health and added financial costs to the citizens, business owners, visitors and tourists of Miami-Dade County. Such SSOs violate non-effluent requirements of the County's NPDES permits, which require proper operation and maintenance of the County's publicly-owned treatment plants and all appurtenant structures.

At no time, up to and including the present time, has Miami-Dade County possessed a NPDES permit that permitted or permits raw sewage overflows into the navigable waters of the United States or discharged outside of the sewer system, particularly into or onto inhabited structures. Because of the on-going and uncorrected SSO problems with the sewers in the Miami-Dade County sewage system, the unlawful and un-permitted discharges of raw sewage are likely to persist into the foreseeable future. The parties named in this Notice intend to seek injunctive relief and civil penalties against Miami-Dade County in order to obtain a permanent solution to this serious pollution of the nation's waterways.

According to "Miami-Dade County Water and Sewer Infrastructure Report," dated July 2012, the unmet "critical" infrastructure needs for the sewer system totals $736,086,000 for sewer projects and, according to that report, this is just the "most deteriorated and vulnerable" parts of the system. The Sewer Infrastructure Report is attached hereto as Ex. B and specifically incorporated herein. More recently, in its Wastewater Improvement Project List, attached hereto as Ex. I and incorporated herein, the County identified $1,457,622,000 in repairs and other work needed to bring the County into compliance with the Act.

Miami-Dade County agreed to a First Partial Consent Decree, which was entered as an Order of the Southern District of Florida, in Case No. 93-1109-CIV-Moreno, on January 13, 1994. In Paragraph 8 of that Order Miami-Dade County specifically agreed to "take all steps necessary to minimize further unpermitted discharges of untreated wastewater containing raw sewage to local surface waters...." Miami-Dade County has failed to comply with this lawful Order of the federal court in that it has not taken all steps necessary to minimize further unpermitted discharges of raw sewage to local surface waters. If it had, then the SSOs, as described above, would not have occurred and would not be occurring now.

Miami-Dade County agreed to a Second and Final Partial Consent Decree on April 17, 1995, also in case CIV-93-1109-Moreno. In Paragraph 8 of the Second and Final Partial Consent Decree, Miami-Dade County agreed to "...cause the immediate implementation of the remedial measures as herein set forth, take all steps necessary to minimize further unpermitted discharges

Notice of Intent to Sue
October 8, 2012
Page 6

of untreated wastewater containing raw sewage to local surface waters, and agree to all other conditions of this Consent Decree." Miami-Dade County has failed to comply with this lawful Order of the federal court in that it has not taken all steps necessary to minimize unpermitted discharges of raw sewage from SSOs. If it had, then the SSOs, as described above, would not have occurred and would not be occurring now.  See, Miami Herald, Rabin, C. and Morgan, C, "Feds file complaint, demand Miami-Dade County fix faulty sewer lines", May 2, 2012, http://www.miamiherald.com/2012/05/02/v-fullstory/2779936/feds-file-complaint-demand-miami.html ("John Renfrow, director of Miami-Dade's Water and Sewer Department, acknowledged the string of major ruptures that have plagued the county's sewage system in recent years, saying the aging network is 'being held together by chewing gum.' He added he has sought more money to fix the leaks for a long time.")

A system "being held together by chewing gum" is not what Miami-Dade County committed to build and operate in the 1994 and 1995 federal Consent Decrees and is a violation of both Consent Decrees and the NPDES permits for the North and Central plants which obligate the County to proper operation and maintenance.

These conditions not only violate the Orders of the United States District Court, but they also violate 40 C.F.R. Part 122.41(e).  The Clean Water Act and its applicable regulations require that all appurtenant structures leading to the County's wastewater treatment plants must be properly operated and maintained at all times.

### Central Plant (Virginia Key) – NPDES Violations

On June 12, 2012, U.S. EPA sent to Miami-Dade County a "Compliance Evaluation Inspection of the Central District Wastewater Treatment Plant Notice of Violation National Pollutant Discharge Elimination System Permit No. FL0024805." That document is attached as Ex. J and is specifically incorporated by reference herein. According to U.S. EPA, Miami-Dade County violated Part II, Section B.I. of the above referenced NPDES Permit, and 40 C.F.R. §122.41(e) related to improper operation and maintenance, as well as Part III, Section C.1.c. and 40 C.F.R. §403.8(f)(2)(v), as more specifically set forth in the enclosed U.S. EPA report.

Miami-Dade County is specifically put on notice of the effluent limit violations identified in the U.S.EPA inspection report, Ex. J, and all of the non-effluent limit violations referenced therein. Additional documents evidencing known NPDES effluent limitations at the Central Plant are collectively attached hereto and incorporated herein as Ex. K. On information and belief, the County has actual knowledge of additional effluent violations over the past 5-years, which will be identified in discovery. Notifiers specifically include all such effluent violations in this Notice.

According to U.S. EPA, Miami-Dade County has also reported to U.S. EPA and FDEP within the last five years a number of exceedances of the effluent limitations in the NPDES permits at the Central Plant. Any such exceedance that has been so reported (together with those

Notice of Intent to Sue
October 8, 2012
Page 7

of which the County is aware, but were not reported, if any) are specifically incorporated by reference herein in this Notice Letter.

Many of the violations/deficiencies of the Central Plant were continuations from FDEP inspections in 2010, and earlier.  Copies of FDEP inspection reports dated October 28, 2010, October 29, 2010, and July 17, 2012, are attached hereto as Ex. L, and incorporated herein. The October 28, 2010 report rated the Central Plant as "Significant Out of Compliance" and two years later FDEP found the same conditions at the Central Plant, again rating it as "Significant Out of Compliance."  All violations and deficiencies noted in the 2010 reports and the 2012 report are specifically incorporated by reference herein.

According to U.S. EPA's June 12, 2012 inspection report "[u]ntil consistent compliance is achieved, the County is considered to be in violation of the CWA and is subject to enforcement action pursuant to Section 309 of the CWA, 33 U.S.C. § 1319." Because Miami-Dade County still operates the Central Plant each and every day without consistent compliance with the CWA and its regulations as identified by the U.S. EPA and the FDEP, it is now and continues to be in violation of the CWA at this location, as specified in this Notice.

In addition to the violations identified above, the June 12, 2012,U.S. EPA Notice of Violations, provides specific evidence that Miami-Dade County has allowed and does allow waste haulers to dump liquid wastes and medical wastes at the Central Plant in violation of the Clean Water Act and U.S. EPA Pre-treatment regulations. U.S. EPA stated in the June 12, 2012, Report that "[t]he EPA and WASD inspected the septic tank hauler unloading area (which is discharged into Plant 1). It was noted that there was medical waste (a needle or syringe) and solid debris that had recently been discharged into the area. *See the enclosed photos for evidence.*"

As stated in the June 2012 U.S. EPA Report: "Violation/Recommendation: 40 C.F.R. §403.8(f)(2)(v) requires Miami-Dade to 'randomly sample and analyze the effluent from Industrial Users and conduct surveillance activities in order to identify, independent of information supplied by Industrial Users, occasional and continuing noncompliance with Pretreatment Standards.' Miami-Dade WASD should develop and implement a sampling protocol to monitor individual hauled receipts of non-domestic wastewater. This activity, which can be random in nature, is necessary to identify noncompliance with federal standards and 'local limits (Pretreatment Standards) by these industrial users and to prevent incompatible wastes from entering Plant 1 uncontrolled." This conduct also violates Part III, C of the Central Plant's federal NPDES Permit.

Many of the same NPDES violations that U.S. EPA found in June 2012 were also brought to the County's attention in a U.S. EPA 2009 inspection (see Ex. M, attached hereto and incorporated herein). For example, with regard to Plant #1 at the Central POTW, U.S. EPA wrote in its September 29, 2009 Central Plant U.S. EPA Inspection Report: "Plant #1 Findings - (1) MDWASD must have at all times at least one of the influent grit chambers online for Plant #1.