Notice of Intent to Sue
October 8, 2012
Page 8

Most of the incoming grit and solids is ending up in the oxygenation tanks, and is carrying somewhat into the final settling tanks. The continuous build-up of grit and solids/debris being allowed in these areas necessitates a greater frequency of cleaning, maintenance, and repairs for the oxygenation tanks than is occurring at present, and will eventually lead to effluent limit violations of the NPDES permit. This problem has been a repeated finding annually since 2005. (2) MDWASD must increase the frequency in its Maintenance Program for the final settling tanks to ensure that no short circuiting of the weirs occurs and trash/debris/solids is not leaving treatment or fouling equipment. This problem has been a repeated finding since 2007. (3) MDWASD must work with the Miami-Dade DERM to institute a program which will assert better control concerning conditions for acceptance and denial of hauled wastes. The quality and content of allowed discharges must be verified before proceeding with the discharge, and locations should be in place to redirect haulers which are denied. There was significant evidence that solids typical of hauled wastes are passing through biological treatment to the final clarifiers."

The County did little to correct these violations between 2009 and 2012, when it was again cited by U.S. EPA for the same illegal conduct. Based on the County's failure to correct these violations of its NPDES permit, it is likely that such unlawful acts will continue into the future. Thus, the violations noted by U.S. EPA are continuing violations, not wholly-past violations.

Also in the June 2012 U.S. EPA Report, it states: "<u>Violation/Recommendation</u>: 40 C.F.R. § 122.41(e) and Part II, Section B.(I.) of the EPA-issued NPDES permit require the permittee to '... at all times properly operate and maintain all facilities and systems of treatment and control (and related appurtenances) which are installed or used by the permittee to achieve compliance with the conditions of this permit.' Miami-Dade WASD violated this regulatory requirement and permit condition due to the grit chamber being non-operational."

Further, the June 2012 U.S. EPA Report states: "<u>Deficiency/Recommendation</u>: Previous EPA inspections have noted similar trash, sheens, floatables, sanitary products, pin floc, color and algae in the final settling tanks/secondary clarifiers. Miami-Dade WASD should implement a regularly-scheduled cleaning of the effluent troughs between tanks, as well as removal of any floatables/trash. In addition, Miami-Dade WASD should explain why the settling tanks are experiencing such large amounts of pin floc that is being discharged (e.g. sludge algae and/or blanket depths; not enough sludge wasting due to out of service sludge digesters, etc.). All of the trash, floatables, sanitary products, algae and floc have the potential to be discharged through the outfall into the Atlantic Ocean." If through additional discovery Notifiers uncover that medical waste and trash, etc., have been discharged into the Atlantic Ocean, this will be evidence of further violations of the Clean Water Act, including, but not limited to Section 1311(f), which prohibits the discharge of medical waste in the waters of the US.

The U.S. EPA June 2012 Report further states: "Plant I's primary anaerobic sludge digester #1 experienced a roof collapse on September 5, 2011 and was still out of service during this inspection." The U.S. EPA also noted water and/or sludge spills/leaks from multiple sludge

Notice of Intent to Sue
October 8, 2012
Page 9

pumps in the digester areas. Specifically, the U.S. EPA noted sludge/water leaks in both digester cluster buildings. *See the enclosed photos (for evidence).* U.S. EPA identified a Violation/Recommendation: 40 C.F.R. § 122.41(e) and Part II, Section B.(1.) of the EPA-issued NPDES permit, which requires the permittee to '... at all times properly operate and maintain all facilities and systems of treatment and control (and related appurtenances) which are installed or used by the permittee to achieve compliance with the conditions of this permit.' The increasing sludge digester rehabilitation needs, including but not limited to, digester covers, as well as transfer pumps, control equipment/pumps and buildings, will put further stress on Plant 1 and could potentially cause solids backup into the effluent if not addressed immediately. Given the amount of pin floc being discharged and the increasing capital, operation and maintenance needs on the entire WWTP, Miami-Dade WASD should implement a capital improvement needs study and fund/implement the recommended capital improvements as soon as possible."

The Miami-Dade Central Plant was in violation of the Act while the County "borrowed" tens of millions of dollars from the WASD, including $32 million in 2011 alone, to fund general county operations, instead of fixing the crumbling sewer infrastructure. See Miami-Dade Water and Sewer Department Annual Financial Report For Fiscal Year Ended September 30, 2011, attached hereto as Ex. N.

The June 2012 U.S. EPA Report also states: "Plant 2's final settling tanks/secondary clarifiers #2 and #9 were out of service for maintenance during the inspection. Violation/Recommendation: 40 C.F.R. § 122.41 (e) and Part II, Section B.( 1.) of the EPA-issued NPDES permit require the permittee to 'at all times properly operate and maintain all facilities and systems of treatment and control (and related appurtenances) which are installed or used by the permittee to achieve compliance with the conditions of this permit.' Miami-Dade WASD violated this regulatory requirement and permit condition due to Plant 2's final settling tanks/secondary clarifiers #2 and #9 being out of service. Miami-Dade specifically noted that these two final settling tanks were offline in explaining the CBODs and TSS effluent violations in the cover letter to the March 2012 DMR. Knowing the final settling tank/secondary clarifiers' immediate impact on effluent quality, both settling tanks (#2 and #9) should be rehabilitated and placed back into service immediately." Ex. J.

The June 2012 U.S. EPA Report also provides: "sludge digesters (#3, 4 and 10) in Plant 2 were out of service during the inspection, generally due to roof leaks/sinking. *See the enclosed photos for evidence.* Violation/Recommendation: 40 C.F.R. § 122.4I(e) and Part II, Section 8 of the EPA-issued NPDES permit require the permittee to ' ... at all times properly operate and maintain all facilities and systems of treatment and control (and related appurtenances) which are installed or used by the permittee to achieve compliance with the conditions of this permit.' The increasing sludge digester rehabilitation needs, including but not limited to, digester covers, as well as transfer pumps, control equipment/pumps and buildings, will put further stress on Plant 2 and could potentially cause solids backup into the effluent if not addressed immediately. Given the amount of pin floc being discharged and the increasing capital, operation and maintenance

Notice of Intent to Sue
October 8, 2012
Page 10

needs on the entire WWTP, Miami-Dade WASD should implement a capital improvement needs study and fund/implement the recommended capital improvements as soon as possible." Ex. J

The June 2012 U.S. EPA Report also noted: "The EPA observed numerous pallets of new pumps for the sludge digester control buildings inside the sludge dewatering building. While some of the pumps have been replaced since the September 2011 inspection (e.g. Sludge digester cluster #4 in Plant 2), Miami-Dade does not have overtime funds to pay O&M staff to install the new sludge pumps in the sludge digester control buildings. Deficiency/Recommendation: As noted above, there are a lot of seal water issues in the sludge pumps (both RAS and transfer pumps between the primary and secondary digesters) in both Plants. Miami-Dade WASD should fund overtime as soon as possible to install the new sludge pumps throughout the entire WWTP." Ex. J.

One of the critical points that U.S. EPA makes in its June 2012 Inspection Report and Notice of Violations is that repairs to the Central Plant are needed immediately and the County must provide proper levels of funding. Thus, not only must the violations of the Act be addressed, but issues of timing and funding must be dealt with by the federal court in the injunctive relief phase of the case.

### Central Plant NPDES Permit Renewal– Violation of 33 U.S.C. § 1343

According to the FDEP's 2010 Inspection Report, Ex. L, p. 3-4: "MDWASD - CDWWTF currently operates under FDEP administratively extended operating permit number DO-13-241707 which had been converted to Wastewater Facility Permit Number FLA013606-001 under Application No. DO 13-280080 dated February 6, 1996 which was later changed to FLA024805-001 under permit revision under Application No. DC 13-264955 dated October 28, 1996. Application File No. FLA024805-001-DW1P is the operating permit for renewal. The renewal is currently being processed by the Department. The facility is currently permitted to treat and dispose of 143.0 mgd of sewage, with 7.878 mgd of in-plant reuse. Disposal is primarily via ocean outfall discharge, which is permitted separately under EPA Permit No. FL0024805. The ocean discharge permit expired June 30, 2004, and the permit renewal is being processed by EPA."

This means that both the State and the federal permits have expired by their own terms and have been "under review" for many years. On information and belief, the discharge of sewage from the Central Plant violates 33 U.S.C. Section 1343 (c)(2), which provides: "In any event where insufficient information exists on any proposed discharge to make a reasonable judgment on any of the guidelines established pursuant to this subsection no permit shall be issued under section 1342 of this title." The Notifiers claim on information and belief that the Central Plant is illegally discharging sewage into the Atlantic Ocean under Section 1343, because neither FDEP nor U.S. EPA have sufficient information regarding the all of the Guideline factors in 33 U.S.C. Sec. 1343(c)(1) to re-issue a NPDES ocean discharge permit for the Central Plant.

Notice of Intent to Sue
October 8, 2012
Page 11

### Central Plant Odor Violations

The Central Plant has in the past emitted and does regularly emit strong and nauseating sewer odors far beyond the property line of the Plant onto Rickenbacker Causeway, Crandon Park, the University of Miami's Rosenstiel School of Marine and Atmospheric Science, Mast Academy, the Village of Key Biscayne and Fisher Island. One example of when such strong odors were present was the evening of August 18, 2012. It is likely that such odors (permit violations) will continue into the future. Operation of a publicly-owned treatment plant in such a manner that causes nuisance odors outside the boundary of the Plant is a violation of the Plant's NPDES permit and the Clean Water Act regulations requiring proper operation and maintenance at all times.

### Under Bay Sewer Lines -- Imminent and Substantial Endangerment

Miami-Dade County agreed to a First Partial Consent Decree, which was entered as an Order of the Southern District of Florida, in Case No. 93-1109-CIV-Moreno, on January 13, 1994. That Consent Decree concerned, *inter alia*, the force main that conveys untreated wastewater from the City of Miami under Biscayne Bay to the Central District Wastewater Treatment Plant on Virginia Key. The U.S. EPA in 1994 alleged that that force main was "aged and deteriorated and in need of replacement" and presented an imminent and substantial endangerment to the navigable waters of the United States. Miami-Dade County specifically agreed in Para. 8 of that Decree to: "take all steps necessary to minimize further unpermitted discharges of untreated wastewater containing raw sewage to local surface waters...." See also, Miami Today, Ortiz, L., "Sewage Leak 'Time Bomb' in Biscayne Bay", week of July 26, 2012, http://miamitodaynews.com/news/120726/story2.shtml (" 'The pipe is about to burst,' John W. Renfrow...told the county commission last week. 'We're facing a catastrophic event' ... 'we can't afford any delay.'")

Miami-Dade County is hereby put on notice that, with regard to the existing under-bay sewer force mains that are presently in use, it has failed to comply with this lawful Order of the United States District Court in that it has not taken "all steps necessary to minimize unpermitted discharges of raw sewage from the force mains" that convey untreated wastewater from Miami Beach to the Central Plant on Virginia Key. Ex. G, Para. 8. If it had, then the current force mains under the Bay from Miami Beach to the Central Plant would not be in imminent danger of a catastrophic failure or, the County would have already provided for solutions that did not delay needed repairs or replacements so long that, in the County's own admission, another environmental catastrophe is imminent. See *Miami Today*, "Sewage Leak 'Time Bomb,'" *July 26, 2012*.

These imminent and substantial endangerment conditions not only violate the Order of the United States District Court, but they violate 40 C.F.R, Sect. 122.41(e) and the proper operation and maintenance provision of the Central Plant's federal NPDES permit. All

Notice of Intent to Sue
October 8, 2012
Page 12

appurtenant structures (such as the under bay force mains) leading to the Central Plant must be properly operated and maintained at all times.

Miami-Dade County agreed to a Second and Final Partial Consent Decree on April 17, 1995, also in case CIV-93-1109-Moreno. Both the First and Second Partial Consent Decrees are still active and have not been legally terminated. In Paragraph 8 of the Second and Final Partial Consent Decree, Miami-Dade County agreed to: "...cause the immediate implementation of the remedial measures as herein set forth, take all steps necessary to minimize further unpermitted discharges of untreated wastewater containing raw sewage to local surface waters, and agree to all other conditions of this Consent Decree."

Miami-Dade County has failed to comply with this lawful Order of the United States District Court in that it has not taken "all steps necessary to minimize unpermitted discharges of raw sewage" from the force mains that convey untreated wastewater from Miami Beach to the Central Plant on Virginia Key. If it had, then the current force mains under the Bay to the Central Plant would not be in imminent danger of a catastrophic failure or, the County would have already provided for a repair or replacement solution that did not delay so long that another environmental catastrophe is imminent. See above, The Miami Herald, "Feds file complaint", May 2, 2012.

As noted above, a system "being held together by chewing gum" is not what Miami-Dade County committed to in two major Consent Decrees in federal court in 1994-1995 and is a violation of the CWA, its implementing regulations, both Consent Decrees, and the NPDES permits for County's publicly-owned treatment plants.

### North Plant NPDES Violations

In addition to the North Plant's SSO violations described in this Notice, the North Plant has also violated the Clean Water Act and the Plant's NPDES permit by discharging wastewater in violation of the effluent standards contained in its permit. Documents evidencing these effluent violations are attached hereto as Exhibit O and incorporated by reference herein. On information and belief, the County has actual knowledge of additional effluent violations over the past 5-years, which will be identified in discovery. Notifiers specifically include all such effluent violations in this Notice. Based on the County's history of persistent violations and demonstrated ineptitude in the operation and maintenance of the sewage system, these effluent violations which occurred in the past are likely to occur again in the future.

**The person or persons responsible for the alleged violation.** Miami-Dade County, the Mayor of Miami-Dade County, the Board of Commissioners, the Water and Sewer Department and its Director are all responsible for the alleged violations of the Clean Water Act.

**The location of the alleged violations.** The locations of the violations are identified above and include, but are not limited to: the publicly-owned treatment plants owned and

Notice of Intent to Sue
October 8, 2012
Page 13

operated by Miami-Dade County; the entire Miami-Dade sewer system appurtenant to these three plants and all equipment that is part of the sewer system; the under-bay sewer force mains that are in imminent and substantial danger of rupture; and all outfall structures, including the ocean outfalls from the North and Central Plants.

**The full name and address and telephone number of the person giving notice.** The persons giving notice are: Biscayne Bay Waterkeeper, 465 Ocean Drive, #417, Miami Beach, FL 33139, Alexis Segal, Executive Director, 305-934-8844; and Judi Koslen 251 Galen Drive, Apt. 116, Key Biscayne, FL 33149.

**Identification of counsel.** Counsel for the above notifiers are: Paul Schwiep, Esq. Coffey Burlington, Office in the Grove, 2699 South Bayshore Drive, Miami, FL 33133, 305-858-2900 (P); 305-858-5261 (F); pschwiep@coffeyburlington.com; www.coffeyburlington.com; James M. Porter, Esq., P.A., 9350 Financial Center, 9350 S. Dixie Highway, 10th Floor, Miami, Florida 33156 Telephone 786-425-2299; Jim@JamesMPorterPA.com; Albert J. Slap, Esq., 42 Grand Bay Estates Circle, Key Biscayne, FL 33149, 970-710-9553, albertslap@slaplaw.com; and Julie Dick, Esq., Abraham Law Group, 151 Crandon Blvd., #100, Key Biscayne, FL 33149, jdick@abrahamlawgroup.com.

After conclusion of the 60-day Notice Period, Biscayne Bay Waterkeeper, on its own behalf and on behalf of its individual members, and Judi Koslen, on her own behalf, intend to commence legal action against Miami-Dade County in the United States District Court for the Southern District of Florida for violations of the Clean Water Act and intend to seek all appropriate injunctive relief, as well as civil penalties for each and every day that the County has discharged pollutants into the navigable waters of the United States without a valid permit or otherwise violated the CWA, its implementing regulations, the NPDES permits, and the Consent Decrees. Additionally, Notifiers intend to seek injunctive relief in order to obtain a permanent solution to the serious water pollution that the County's discharges are causing. Notifiers have not yet begun discovery in this matter. It is likely that when discovery is initiated, they will discover other violations by the County of the Clean Water Act– violations of which the County has actual notice. Notifiers hereby include by reference any and all County violations of the CWA, it implementing regulations or the NPDES permits (having taken place during the past 5-years) that are uncovered during discovery.

Very truly yours,

Paul J. Schwiep

PJS/lm
Enclosures

Notice of Intent to Sue
October 8, 2012
Page 14

## INDEX OF EXHIBITS

| | |
|---|---|
| Ex. "A" | FDEP Warning Letters to County dated May 9, 2007; April 1, 2008; July 21, 2008; October 16, 2008; November 3, 2009; November 12, 2009 (two Warning Letters with this same date); October 9, 2009 (two Warning Letters with this same date); October 27, 2009; July 13, 2010; October 13, 2010; October 20, 2010; October 27, 2010; June 2, 2011; September 14, 2011; December 13, 2011; April 26, 2012; May 3, 2012; and June 6, 2012. |
| Ex. "B" | July 2012 Miami-Dade Couty Water & Sewer Infrastructure Report |
| Ex. "C" | Sanitary Sewer Overflow 24 Hour Spreadsheet |
| Ex. "D" | May 1, 2011, Miami-Dade Water and Sewer Department CMOM Self-Assessment Report |
| Ex. "E" | Draft FDEP Consent Order |
| Ex. "F" | February 29, 2012, draft U.S. EPA Consent Decree |
| Ex. "G" | 1994 First Partial Consent Decree |
| Ex. "H" | 1995 Second And Final Partial Consent Decree |
| Ex. "I" | Miami-Dade Water and Sewer Department Consent Decree Project List |
| Ex. "J" | June 12, 2012, U.S. EPA Notice of Violation |
| Ex. "K" | Central Plant Effluent Violations |
| Ex. "L" | October 28, 2010, October 29, 2010, and July 17, 2012, FDEP Central Plant Compliance Inspection Reports |
| Ex. "M" | September 29, 2009, U.S. EPA Central Plant Inspection Report |
| Ex. "N" | Miami-Dade County Comprehensive Annual Financial Report For Fiscal Year Ended September 30, 2011 |
| Ex. "O" | North Plant Effluent Violations |