

COFFEY BURLINGTON

Email: pschwiep@coffeyburlington.com

www.coffeyburlington.com

OFFICE IN THE GROVE, PENTHOUSE
2699 SOUTH BAYSHORE DRIVE
MIAMI, FLORIDA 33133
T: 305.858.2900   F: 305.858.5261

October 8, 2012

Miami-Dade County
c/o The Honorable Carlos A. Gimenez, Mayor
Office of the Mayor
Stephen P. Clark Center
111 N.W. 1st Street
Miami, FL 33128

Re:   **Clean Water Act Section 505 Notice of Intent To Sue**

Dear Mayor Gimenez:

Attached to this letter is a Notice of Intent To Sue Under Section 505 of the Clean Water Act together with a disk containing the Exhibits to the Notice.

We would be pleased to meet with you to discuss resolution of this matter. Otherwise, if you require additional information regarding this Notice, please feel free to contact me.

Very truly yours,

Paul J. Schwiep

PJS/lm
Enclosures

cc w/encl.   The Honorable Lisa Jackson
Ms. Gwen Fleming
Mr. Herschel T. Vinyard, Jr.
Mr. John Renfrow



COFFEY BURLINGTON
Email: pschwiep@coffeyburlington.com

www.coffeyburlington.com

OFFICE IN THE GROVE, PENTHOUSE
2699 SOUTH BAYSHORE DRIVE
MIAMI, FLORIDA 33133
T: 305.858.2900  F: 305.858.5261

**October 8, 2012**

**Biscayne Bay Waterkeeper**
465 Ocean Drive, #417
Miami Beach, FL 33139
305-934-8844
www.bbwk.org

and

**Judi Koslen**
251 Galen Dr., Apt. 116
Key Biscayne, FL 33149
(305) 361-7057

## CERTIFIED MAIL/RETURN RECEIPT REQUESTED

TO:   Miami-Dade County c/o the Honorable Carlos A. Gimenez,
       Mayor of Miami-Dade County

       The Board of County Commissioners

       John Renfrow, Director, Miami-Dade County Water and Sewer District

**PLEASE NOTE**: THIS IS A NOTICE OF INTENT TO SUE UNDER 33 U.S.C. § 1365 OF THE FEDERAL CLEAN WATER ACT. PURSUANT TO 40 C.F.R. PART 135, YOU ARE BEING GIVEN NOTICE.

Copies have been sent by certified mail, return receipt requested to:

The Honorable Lisa Jackson, Administrator
U.S. Environmental Protection Agency
Environmental Protection Agency
Ariel Rios Building
1200 Pennsylvania Avenue, N.W.
Washington, DC 20460

Notice of Intent to Sue
October 8, 2012
Page 2

Ms. Gwen Fleming
Regional Administrator, Region IV
U.S. Environmental Protection Agency
61 Forsyth Street, SW
Atlanta, GA 30303-8960

Herschel T. Vinyard, Jr.
Secretary, Florida Department of Environmental Protection
3900 Commonwealth Boulevard M.S. 49
Tallahassee, Florida 32399

John Renfrow, Director
Miami-Dade Water and Sewer Department
3071 S.W. 38th Ave.
Miami, FL 33146

Pursuant to Section 505(b) of the federal Clean Water Act (the Act or CWA), 33 U.S.C. § 1365(b), this is to put you on notice that Miami-Dade County is discharging pollutants into the navigable waters of the United States without permits authorizing such discharges and in violation of the County's National Pollutant Discharge Elimination System (NPDES) permits for the North and Central Publicly-Owned Wastewater Treatment Plants.  As set forth more fully below, North and Central plant effluent violations, system wide sanitary sewer overflows, the failure to properly operate and maintain the three sewage treatment plants and the appurtenances to those plants, the condition of the 54 inch forcemain pipe under Biscayne Bay and the ocean discharges from the Central and North Plants, violate the Clean Water Act, 40 C.F.R. Section 122.41(e), the NPDES permits for the North and Central Plants, and two existing federal consent decrees. Accordingly, at the end of the 60-day Notice Period, Biscayne Bay Waterkeeper and Ms. Koslen intend to initiate a citizens' suit against Miami-Dade County pursuant to Section 505(a)(1) of the Clean Water Act.

## Sanitary Sewer Overflows – Violations of the Clean Water Act

Over the past five years, the County has discharged raw sewage from Sanitary Sewer Overflow (SSO) events occurring throughout the Miami-Dade sewer system and overflows and spills at the County's North and Central sewage treatment plant, as set forth more fully below. These discharges violate the federal Clean Water Act, 33 U.S.C. § 1311(a), which provides that "[e]xcept in compliance with this section and sections 1312, 1316, 1317, 1328, 1342, and 1344 of this title, the discharge of any pollutant by any person shall be unlawful." The actions of the County, including the Water and Sewer Department (WASD), in discharging pollutants into the navigable waters from point sources without permits or in violation of permits, as defined in 33 U.S.C. § 1362(12)(A), violates the Act.

Notice of Intent to Sue
October 8, 2012
Page 3

On a periodic and regular basis for at least the past 5 years and as recently as August 13, 2012, the sanitary sewer conveyance system owned and operated by Miami-Dade County has overflowed raw sewage into the navigable waters of the United States from openings in the sewer systems (SSOs), including, but not limited to, force main malfunctions, line breaks, pump station overflows, etc. Such raw sewage overflows are a direct violation of the Act, a threat to public health and safety, and cause injury-in-fact to the recreational and aesthetic interests of the group and individual giving notice in this letter as well as to the citizens of Miami-Dade County and its visitors as a whole.

Over the past two-years alone, SSOs from the Miami-Dade sewer system have discharged tens of millions of gallons of raw sewage, much of which ended up polluting Miami waterways. See the Warning Letters attached hereto as Ex. A and incorporated herein issued by the Florida Department of Environmental Protection (FDEP) to Miami-Dade County.   See also, Miami Herald, Rabin, C. and Morgan, C, "Miami-Dade's leaky pipes: More than 47 million gallons of waste spilled in past two years", May 14, 2012, http://www.miamiherald.com/2012/05/14/2799249/miami-dades-leaky-pipes-more-than.html Miami-Dade County's antiquated sewer system has ruptured at least 65 times over the past two years, spewing more than 47 million gallons of untreated human waste into waterways and streets" across Miami-Dade County. A single sewage spill in 2010, for example, resulted in the discharge of 20 million gallons of raw sewage into the Biscayne Canal, a navigable water of the U.S. See pages 24-25 (including photo), Miami-Dade County July 2012 Infrastructure Report, attached hereto and incorporated herein as Ex. B.

Miami-Dade County's Water and Sewer Department is required to keep records of the date, location and duration of each unpermitted sanitary sewer overflow. WASD is also required to provide that information to the United States Environmental Protection Agency (U.S. EPA) and the FDEP. The specific information of each and every SSO over the past five years is in the possession of the WASD, and therefore the County is on actual notice of each such activity that constitutes violation of the Clean Water Act, the location of the violations, and the dates of the violations. Each report to U.S. EPA or FDEP of sanitary sewer overflows dating back five-years from the date of this notice letter is specifically incorporated by reference herein.

More specifically, but without limitation, each and every SSO event identified in the Miami-Dade Water and Sewer Department document entitled, "Miami-Dade SSOs from 24-hour emails," attached hereto as Ex. C, and each and every SSO event identified or described in the 2011 Miami-Dade CMOM Self-Assessment, attached hereto as Ex. D, is specifically incorporated herein by reference.

In addition, you are put on notice of the illegality of all SSO events occurring over the past 5-years of which you have actual knowledge, whether or not they have been included on Exs. A, B, C, D, or any other specific Exhibit attached hereto and incorporated herein. Each and every receiving water into which raw sewage from an SSO flowed is a navigable water of the US. These specific receiving waters are identified in Exs. A, B, C, and D and as further described

in the documents filed by Miami-Dade County with the U.S. EPA and the FDEP. Regardless whether these specifically identified SSOs reached the navigable waters of the U.S., the discharge of raw sewage from the Miami-Dade sewers prior to being properly treated at one of the three sewage treatment plants violates the Clean Water Act, its implementing regulations, or NPDES permits for the plants of which the SSO is appurtenant.

For example: Central Plant, Permit No. FL0024805, issued April 16, 1999 (now expired and under EPA review), Part II, Section B. Operation and Maintenance of Pollution Controls, Para. 1 provides that "[t]he permittee shall at all times properly operate and maintain all facilities and systems of treatment and control (and related appurtenances) which are installed or used by the permittee to achieve compliance with the conditions of this permit." This same or a similar provision is included in the North Plant NPDES permit. See North Permit, FL 0032182, Section IX, General Conditions, Para. 7 ("[t]he Permittee shall at all times properly operate and maintain the facility and systems of treatment and control, and related appurtenances, that are installed and used by the Permittee to achieve compliance with the conditions of this permit.") All SSOs that occurred in the Miami-Dade sewer system over the past 5-years which were appurtenant to the North or the Central plants violated the proper operation and maintenance provision of the plant's NPDES permit, whether or not the raw sewage overflow ever reached the navigable waters of the US.

Additionally, the South Plant's FDEP operating permit also requires WASD to properly operate and maintain the sewage collection system appurtenant to that facility. Unpermitted discharges from the appurtenant structures to the South Plant also violate the Clean Water Act and its implementing regulations.

A number of these SSO events reported by Miami-Dade County to FDEP are included in a draft Consent Order sent by the FDEP to Miami Dade County on December 10, 2010, attached hereto as Ex. E and incorporated herein. That Consent Order was never signed by Miami-Dade County. The U.S. EPA has been negotiating with Miami-Dade County for some time over a draft consent decree to take the place of two existing Consent Decrees that are currently operative in federal court in the Southern District of Florida. A copy of a recent draft U.S. EPA consent decree is attached hereto as Ex. F. The January 1994 First Partial Consent Decree is attached hereto as Ex. G and the September 1995 Second And Final Partial Consent Decree is attached hereto as Ex. H. Neither of these two existing Consent Decrees are effectively preventing Miami-Dade County from violating the federal Clean Water Act and, notwithstanding their knowledge of the violations, neither the FDEP nor the U.S. EPA have diligently prosecuted the County for its widespread Clean Water Act violations over the past five years. As a consequence, citizens of Miami-Dade County are taking this action to ensure the County comes into compliance and to ensure the County *maintains* compliance with the Clean Water Act.

These sanitary sewer overflows have occurred in the past at various locations and are likely to recur in the future because of the failure of the County to properly operate and maintain its sewer system, which itself is a violation of the Clean Water Act and, more specifically, 40

Notice of Intent to Sue
October 8, 2012
Page 5

C.F.R. § 122.41(e). All publicly owned treatment works (POTWs) must provide at least secondary treatment, as defined by U.S. EPA and its regulations, for all sewage entering the sewer system before discharge. Sanitary sewer overflows, being the discharge of raw, untreated sewage from the sewage conveyance system before treatment occurs, are a violation of the Act. It is unlawful for the owner or operator of a sewer system to discharge sewage without a state or federal permit. See CWA Section 301(a), 33 U.S.C. § 1311(a). These reports of SSOs also allegedly include SSOs where raw sewage enters or impacts private property, occupied residences and businesses in Miami-Dade County. Raw sewage overflows to inhabited structures result in threats to public health and added financial costs to the citizens, business owners, visitors and tourists of Miami-Dade County. Such SSOs violate non-effluent requirements of the County's NPDES permits, which require proper operation and maintenance of the County's publicly-owned treatment plants and all appurtenant structures.

At no time, up to and including the present time, has Miami-Dade County possessed a NPDES permit that permitted or permits raw sewage overflows into the navigable waters of the United States or discharged outside of the sewer system, particularly into or onto inhabited structures. Because of the on-going and uncorrected SSO problems with the sewers in the Miami-Dade County sewage system, the unlawful and un-permitted discharges of raw sewage are likely to persist into the foreseeable future. The parties named in this Notice intend to seek injunctive relief and civil penalties against Miami-Dade County in order to obtain a permanent solution to this serious pollution of the nation's waterways.

According to "Miami-Dade County Water and Sewer Infrastructure Report," dated July 2012, the unmet "critical" infrastructure needs for the sewer system totals $736,086,000 for sewer projects and, according to that report, this is just the "most deteriorated and vulnerable" parts of the system. The Sewer Infrastructure Report is attached hereto as Ex. B and specifically incorporated herein. More recently, in its Wastewater Improvement Project List, attached hereto as Ex. I and incorporated herein, the County identified $1,457,622,000 in repairs and other work needed to bring the County into compliance with the Act.

Miami-Dade County agreed to a First Partial Consent Decree, which was entered as an Order of the Southern District of Florida, in Case No. 93-1109-CIV-Moreno, on January 13, 1994. In Paragraph 8 of that Order Miami-Dade County specifically agreed to "take all steps necessary to minimize further unpermitted discharges of untreated wastewater containing raw sewage to local surface waters…." Miami-Dade County has failed to comply with this lawful Order of the federal court in that it has not taken all steps necessary to minimize further unpermitted discharges of raw sewage to local surface waters. If it had, then the SSOs, as described above, would not have occurred and would not be occurring now.

Miami-Dade County agreed to a Second and Final Partial Consent Decree on April 17, 1995, also in case CIV-93-1109-Moreno. In Paragraph 8 of the Second and Final Partial Consent Decree, Miami-Dade County agreed to "…cause the immediate implementation of the remedial measures as herein set forth, take all steps necessary to minimize further unpermitted discharges

of untreated wastewater containing raw sewage to local surface waters, and agree to all other conditions of this Consent Decree." Miami-Dade County has failed to comply with this lawful Order of the federal court in that it has not taken all steps necessary to minimize unpermitted discharges of raw sewage from SSOs. If it had, then the SSOs, as described above, would not have occurred and would not be occurring now. See, Miami Herald, Rabin, C. and Morgan, C, "Feds file complaint, demand Miami-Dade County fix faulty sewer lines", May 2, 2012, http://www.miamiherald.com/2012/05/02/v-fullstory/2779936/feds-file-complaint-demand-miami.html ("John Renfrow, director of Miami-Dade's Water and Sewer Department, acknowledged the string of major ruptures that have plagued the county's sewage system in recent years, saying the aging network is 'being held together by chewing gum.' He added he has sought more money to fix the leaks for a long time.")

A system "being held together by chewing gum" is not what Miami-Dade County committed to build and operate in the 1994 and 1995 federal Consent Decrees and is a violation of both Consent Decrees and the NPDES permits for the North and Central plants which obligate the County to proper operation and maintenance.

These conditions not only violate the Orders of the United States District Court, but they also violate 40 C.F.R. Part 122.41(e). The Clean Water Act and its applicable regulations require that all appurtenant structures leading to the County's wastewater treatment plants must be properly operated and maintained at all times.

### Central Plant (Virginia Key) – NPDES Violations

On June 12, 2012, U.S. EPA sent to Miami-Dade County a "Compliance Evaluation Inspection of the Central District Wastewater Treatment Plant Notice of Violation National Pollutant Discharge Elimination System Permit No. FL0024805." That document is attached as Ex. J and is specifically incorporated by reference herein. According to U.S. EPA, Miami-Dade County violated Part II, Section B.I. of the above referenced NPDES Permit, and 40 C.F.R. §122.41(e) related to improper operation and maintenance, as well as Part III, Section C.1.c. and 40 C.F.R. §403.8(f)(2)(v), as more specifically set forth in the enclosed U.S. EPA report.

Miami-Dade County is specifically put on notice of the effluent limit violations identified in the U.S.EPA inspection report, Ex. J, and all of the non-effluent limit violations referenced therein. Additional documents evidencing known NPDES effluent limitations at the Central Plant are collectively attached hereto and incorporated herein as Ex. K. On information and belief, the County has actual knowledge of additional effluent violations over the past 5-years, which will be identified in discovery. Notifiers specifically include all such effluent violations in this Notice.

According to U.S. EPA, Miami-Dade County has also reported to U.S. EPA and FDEP within the last five years a number of exceedances of the effluent limitations in the NPDES permits at the Central Plant. Any such exceedance that has been so reported (together with those

Notice of Intent to Sue
October 8, 2012
Page 7

of which the County is aware, but were not reported, if any) are specifically incorporated by reference herein in this Notice Letter.

Many of the violations/deficiencies of the Central Plant were continuations from FDEP inspections in 2010, and earlier. Copies of FDEP inspection reports dated October 28, 2010, October 29, 2010, and July 17, 2012, are attached hereto as Ex. L, and incorporated herein. The October 28, 2010 report rated the Central Plant as "Significant Out of Compliance" and two years later FDEP found the same conditions at the Central Plant, again rating it as "Significant Out of Compliance." All violations and deficiencies noted in the 2010 reports and the 2012 report are specifically incorporated by reference herein.

According to U.S. EPA's June 12, 2012 inspection report "[u]ntil consistent compliance is achieved, the County is considered to be in violation of the CWA and is subject to enforcement action pursuant to Section 309 of the CWA, 33 U.S.C. § 1319." Because Miami-Dade County still operates the Central Plant each and every day without consistent compliance with the CWA and its regulations as identified by the U.S. EPA and the FDEP, it is now and continues to be in violation of the CWA at this location, as specified in this Notice.

In addition to the violations identified above, the June 12, 2012, U.S. EPA Notice of Violations, provides specific evidence that Miami-Dade County has allowed and does allow waste haulers to dump liquid wastes and medical wastes at the Central Plant in violation of the Clean Water Act and U.S. EPA Pre-treatment regulations. U.S. EPA stated in the June 12, 2012, Report that "[t]he EPA and WASD inspected the septic tank hauler unloading area (which is discharged into Plant 1). It was noted that there was medical waste (a needle or syringe) and solid debris that had recently been discharged into the area. *See the enclosed photos for evidence.*"

As stated in the June 2012 U.S. EPA Report: "Violation/Recommendation: 40 C.F.R. §403.8(f)(2)(v) requires Miami-Dade to 'randomly sample and analyze the effluent from Industrial Users and conduct surveillance activities in order to identify, independent of information supplied by Industrial Users, occasional and continuing noncompliance with Pretreatment Standards.' Miami-Dade WASD should develop and implement a sampling protocol to monitor individual hauled receipts of non-domestic wastewater. This activity, which can be random in nature, is necessary to identify noncompliance with federal standards and 'local limits (Pretreatment Standards) by these industrial users and to prevent incompatible wastes from entering Plant 1 uncontrolled." This conduct also violates Part III, C of the Central Plant's federal NPDES Permit.

Many of the same NPDES violations that U.S. EPA found in June 2012 were also brought to the County's attention in a U.S. EPA 2009 inspection (see Ex. M, attached hereto and incorporated herein). For example, with regard to Plant #1 at the Central POTW, U.S. EPA wrote in its September 29, 2009 Central Plant U.S. EPA Inspection Report: "Plant #1 Findings - (1) MDWASD must have at all times at least one of the influent grit chambers online for Plant #l.

Notice of Intent to Sue
October 8, 2012
Page 8

Most of the incoming grit and solids is ending up in the oxygenation tanks, and is carrying somewhat into the final settling tanks. The continuous build-up of grit and solids/debris being allowed in these areas necessitates a greater frequency of cleaning, maintenance, and repairs for the oxygenation tanks than is occurring at present, and will eventually lead to effluent limit violations of the NPDES permit. This problem has been a repeated finding annually since 2005. (2) MDWASD must increase the frequency in its Maintenance Program for the final settling tanks to ensure that no short circuiting of the weirs occurs and trash/debris/solids is not leaving treatment or fouling equipment. This problem has been a repeated finding since 2007. (3) MDWASD must work with the Miami-Dade DERM to institute a program which will assert better control concerning conditions for acceptance and denial of hauled wastes. The quality and content of allowed discharges must be verified before proceeding with the discharge, and locations should be in place to redirect haulers which are denied. There was significant evidence that solids typical of hauled wastes are passing through biological treatment to the final clarifiers."

The County did little to correct these violations between 2009 and 2012, when it was again cited by U.S. EPA for the same illegal conduct. Based on the County's failure to correct these violations of its NPDES permit, it is likely that such unlawful acts will continue into the future. Thus, the violations noted by U.S. EPA are continuing violations, not wholly-past violations.

Also in the June 2012 U.S. EPA Report, it states: "Violation/Recommendation: 40 C.F.R. § 122.41(e) and Part II, Section B.(I.) of the EPA-issued NPDES permit require the permittee to '... at all times properly operate and maintain all facilities and systems of treatment and control (and related appurtenances) which are installed or used by the permittee to achieve compliance with the conditions of this permit.' Miami-Dade WASD violated this regulatory requirement and permit condition due to the grit chamber being non-operational."

Further, the June 2012 U.S. EPA Report states: "Deficiency/Recommendation: Previous EPA inspections have noted similar trash, sheens, floatables, sanitary products, pin floc, color and algae in the final settling tanks/secondary clarifiers. Miami-Dade WASD should implement a regularly-scheduled cleaning of the effluent troughs between tanks, as well as removal of any floatables/trash. In addition, Miami-Dade WASD should explain why the settling tanks are experiencing such large amounts of pin floc that is being discharged (e.g. sludge algae and/or blanket depths; not enough sludge wasting due to out of service sludge digesters, etc.). All of the trash, floatables, sanitary products, algae and floc have the potential to be discharged through the outfall into the Atlantic Ocean." If through additional discovery Notifiers uncover that medical waste and trash, etc., have been discharged into the Atlantic Ocean, this will be evidence of further violations of the Clean Water Act, including, but not limited to Section 1311(f), which prohibits the discharge of medical waste in the waters of the US.

The U.S. EPA June 2012 Report further states: "Plant I's primary anaerobic sludge digester #1 experienced a roof collapse on September 5, 2011 and was still out of service during this inspection." The U.S. EPA also noted water and/or sludge spills/leaks from multiple sludge

Notice of Intent to Sue
October 8, 2012
Page 9

pumps in the digester areas. Specifically, the U.S. EPA noted sludge/water leaks in both digester cluster buildings. *See the enclosed photos (for evidence).*   U.S. EPA identified a <u>Violation/Recommendation</u>: 40 C.F.R. § 122.41(e) and Part II, Section B.(l.) of the EPA-issued NPDES permit, which requires the permittee to '... at all times properly operate and maintain all facilities and systems of treatment and control (and related appurtenances) which are installed or used by the permittee to achieve compliance with the conditions of this permit.' The increasing sludge digester rehabilitation needs, including but not limited to, digester covers, as well as transfer pumps, control equipment/pumps and buildings, will put further stress on Plant 1 and could potentially cause solids backup into the effluent if not addressed immediately. Given the amount of pin floc being discharged and the increasing capital, operation and maintenance needs on the entire WWTP, Miami-Dade WASD should implement a capital improvement needs study and fund/implement the recommended capital improvements as soon as possible."

The Miami-Dade Central Plant was in violation of the Act while the County "borrowed" tens of millions of dollars from the WASD, including $32 million in 2011 alone, to fund general county operations, instead of fixing the crumbling sewer infrastructure. See Miami-Dade Water and Sewer Department Annual Financial Report For Fiscal Year Ended September 30, 2011, attached hereto as Ex. N.

The June 2012 U.S. EPA Report also states: "Plant 2's final settling tanks/secondary clarifiers #2 and #9 were out of service for maintenance during the inspection. <u>Violation/Recommendation</u>: 40 C.F.R. § 122.41 (e) and Part II, Section B.( 1.) of the EPA-issued NPDES permit require the permittee to 'at all times properly operate and maintain all facilities and systems of treatment and control (and related appurtenances) which are installed or used by the permittee to achieve compliance with the conditions of this permit.' Miami-Dade WASD violated this regulatory requirement and permit condition due to Plant 2's final settling tanks/secondary clarifiers #2 and #9 being out of service. Miami-Dade specifically noted that these two final settling tanks were offline in explaining the CBODs and TSS effluent violations in the cover letter to the March 2012 DMR. Knowing the final settling tank/secondary clarifiers' immediate impact on effluent quality, both settling tanks (#2 and #9) should be rehabilitated and placed back into service immediately." Ex. J.

The June 2012 U.S. EPA Report also provides: "sludge digesters (#3, 4 and 10) in Plant 2 were out of service during the inspection, generally due to roof leaks/sinking. *See the enclosed photos for evidence.* <u>Violation/Recommendation</u>: 40 C.F.R. § 122.4I(e) and Part II, Section 8 of the EPA-issued NPDES permit require the permittee to ' ... at all times properly operate and maintain all facilities and systems of treatment and control (and related appurtenances) which are installed or used by the permittee to achieve compliance with the conditions of this permit.' The increasing sludge digester rehabilitation needs, including but not limited to, digester covers, as well as transfer pumps, control equipment/pumps and buildings, will put further stress on Plant 2 and could potentially cause solids backup into the effluent if not addressed immediately. Given the amount of pin floc being discharged and the increasing capital, operation and maintenance

Notice of Intent to Sue
October 8, 2012
Page 10

needs on the entire WWTP, Miami-Dade WASD should implement a capital improvement needs
study and fund/implement the recommended capital improvements as soon as possible." Ex. J

The June 2012 U.S. EPA Report also noted: "The EPA observed numerous pallets of new
pumps for the sludge digester control buildings inside the sludge dewatering building. While
some of the pumps have been replaced since the September 2011 inspection (e.g. Sludge digester
cluster #4 in Plant 2), Miami-Dade does not have overtime funds to pay O&M staff to install the
new sludge pumps in the sludge digester control buildings. Deficiency/Recommendation: As
noted above, there are a lot of seal water issues in the sludge pumps (both RAS and transfer
pumps between the primary and secondary digesters) in both Plants. Miami-Dade WASD should
fund overtime as soon as possible to install the new sludge pumps throughout the entire WWTP."
Ex. J.

One of the critical points that U.S. EPA makes in its June 2012 Inspection Report and
Notice of Violations is that repairs to the Central Plant are needed immediately and the County
must provide proper levels of funding. Thus, not only must the violations of the Act be
addressed, but issues of timing and funding must be dealt with by the federal court in the
injunctive relief phase of the case.

### Central Plant NPDES Permit Renewal– Violation of 33 U.S.C. § 1343

According to the FDEP's 2010 Inspection Report, Ex. L, p. 3-4: "MDWASD -
CDWWTF currently operates under FDEP administratively extended operating permit number
DO-13-241707 which had been converted to Wastewater Facility Permit Number FLA013606-
001 under Application No. DO 13-280080 dated February 6, 1996 which was later changed to
FLA024805-001 under permit revision under Application No. DC 13-264955 dated October 28,
1996. Application File No. FLA024805-001-DW1P is the operating permit for renewal. The
renewal is currently being processed by the Department. The facility is currently permitted to
treat and dispose of 143.0 mgd of sewage, with 7.878 mgd of in-plant reuse. Disposal is
primarily via ocean outfall discharge, which is permitted separately under EPA Permit No.
FL0024805. The ocean discharge permit expired June 30, 2004, and the permit renewal is being
processed by EPA."

This means that both the State and the federal permits have expired by their own terms
and have been "under review" for many years. On information and belief, the discharge of
sewage from the Central Plant violates 33 U.S.C. Section 1343 (c)(2), which provides: "In any
event where insufficient information exists on any proposed discharge to make a reasonable
judgment on any of the guidelines established pursuant to this subsection no permit shall be
issued under section 1342 of this title." The Notifiers claim on information and belief that the
Central Plant is illegally discharging sewage into the Atlantic Ocean under Section 1343,
because   neither FDEP nor U.S. EPA have sufficient information regarding the all of the
Guideline factors in 33 U.S.C. Sec. 1343(c)(1) to re-issue a NPDES ocean discharge permit for
the Central Plant.

Notice of Intent to Sue
October 8, 2012
Page 11

## Central Plant Odor Violations

The Central Plant has in the past emitted and does regularly emit strong and nauseating sewer odors far beyond the property line of the Plant onto Rickenbacker Causeway, Crandon Park, the University of Miami's Rosenstiel School of Marine and Atmospheric Science, Mast Academy, the Village of Key Biscayne and Fisher Island. One example of when such strong odors were present was the evening of August 18, 2012. It is likely that such odors (permit violations) will continue into the future. Operation of a publicly-owned treatment plant in such a manner that causes nuisance odors outside the boundary of the Plant is a violation of the Plant's NPDES permit and the Clean Water Act regulations requiring proper operation and maintenance at all times.

## Under Bay Sewer Lines -- Imminent and Substantial Endangerment

Miami-Dade County agreed to a First Partial Consent Decree, which was entered as an Order of the Southern District of Florida, in Case No. 93-1109-CIV-Moreno, on January 13, 1994. That Consent Decree concerned, inter alia, the force main that conveys untreated wastewater from the City of Miami under Biscayne Bay to the Central District Wastewater Treatment Plant on Virginia Key. The U.S. EPA in 1994 alleged that that force main was "aged and deteriorated and in need of replacement" and presented an imminent and substantial endangerment to the navigable waters of the United States. Miami-Dade County specifically agreed in Para. 8 of that Decree to: "take all steps necessary to minimize further unpermitted discharges of untreated wastewater containing raw sewage to local surface waters…." See also, Miami Today, Ortiz, L., "Sewage Leak 'Time Bomb' in Biscayne Bay", week of July 26, 2012, http://miamitodaynews.com/news/120726/story2.shtml (" 'The pipe is about to burst,' John W. Renfrow…told the county commission last week. 'We're facing a catastrophic event' … 'we can't afford any delay.'")

Miami-Dade County is hereby put on notice that, with regard to the existing under-bay sewer force mains that are presently in use, it has failed to comply with this lawful Order of the United States District Court in that it has not taken "all steps necessary to minimize unpermitted discharges of raw sewage from the force mains" that convey untreated wastewater from Miami Beach to the Central Plant on Virginia Key. Ex. G, Para. 8. If it had, then the current force mains under the Bay from Miami Beach to the Central Plant would not be in imminent danger of a catastrophic failure or, the County would have already provided for solutions that did not delay needed repairs or replacements so long that, in the County's own admission, another environmental catastrophe is imminent. See Miami Today, "Sewage Leak 'Time Bomb,'" July 26, 2012.

These imminent and substantial endangerment conditions not only violate the Order of the United States District Court, but they violate 40 C.F.R, Sect. 122.41(e) and the proper operation and maintenance provision of the Central Plant's federal NPDES permit. All

Notice of Intent to Sue
October 8, 2012
Page 12

appurtenant structures (such as the under bay force mains) leading to the Central Plant must be properly operated and maintained at all times.

Miami-Dade County agreed to a Second and Final Partial Consent Decree on April 17, 1995, also in case CIV-93-1109-Moreno. Both the First and Second Partial Consent Decrees are still active and have not been legally terminated. In Paragraph 8 of the Second and Final Partial Consent Decree, Miami-Dade County agreed to: "...cause the immediate implementation of the remedial measures as herein set forth, take all steps necessary to minimize further unpermitted discharges of untreated wastewater containing raw sewage to local surface waters, and agree to all other conditions of this Consent Decree."

Miami-Dade County has failed to comply with this lawful Order of the United States District Court in that it has not taken "all steps necessary to minimize unpermitted discharges of raw sewage" from the force mains that convey untreated wastewater from Miami Beach to the Central Plant on Virginia Key. If it had, then the current force mains under the Bay to the Central Plant would not be in imminent danger of a catastrophic failure or, the County would have already provided for a repair or replacement solution that did not delay so long that another environmental catastrophe is imminent. See above, The Miami Herald, "Feds file complaint", May 2, 2012.

As noted above, a system "being held together by chewing gum" is not what Miami-Dade County committed to in two major Consent Decrees in federal court in 1994-1995 and is a violation of the CWA, its implementing regulations, both Consent Decrees, and the NPDES permits for County's publicly-owned treatment plants.

### North Plant NPDES Violations

In addition to the North Plant's SSO violations described in this Notice, the North Plant has also violated the Clean Water Act and the Plant's NPDES permit by discharging wastewater in violation of the effluent standards contained in its permit. Documents evidencing these effluent violations are attached hereto as Exhibit O and incorporated by reference herein. On information and belief, the County has actual knowledge of additional effluent violations over the past 5-years, which will be identified in discovery. Notifiers specifically include all such effluent violations in this Notice. Based on the County's history of persistent violations and demonstrated ineptitude in the operation and maintenance of the sewage system, these effluent violations which occurred in the past are likely to occur again in the future.

**The person or persons responsible for the alleged violation**. Miami-Dade County, the Mayor of Miami-Dade County, the Board of Commissioners, the Water and Sewer Department and its Director are all responsible for the alleged violations of the Clean Water Act.

**The location of the alleged violations.** The locations of the violations are identified above and include, but are not limited to: the publicly-owned treatment plants owned and

Notice of Intent to Sue
October 8, 2012
Page 13

operated by Miami-Dade County; the entire Miami-Dade sewer system appurtenant to these three plants and all equipment that is part of the sewer system; the under-bay sewer force mains that are in imminent and substantial danger of rupture; and all outfall structures, including the ocean outfalls from the North and Central Plants.

**The full name and address and telephone number of the person giving notice.** The persons giving notice are: Biscayne Bay Waterkeeper, 465 Ocean Drive, #417, Miami Beach, FL 33139, Alexis Segal, Executive Director, 305-934-8844; and Judi Koslen 251 Galen Drive, Apt. 116, Key Biscayne, FL 33149.

**Identification of counsel.**  Counsel for the above notifiers are: Paul Schwiep, Esq. Coffey Burlington, Office in the Grove, 2699 South Bayshore Drive, Miami, FL 33133, 305-858-2900 (P); 305-858-5261 (F); pschwiep@coffeyburlington.com; www.coffeyburlington.com; James M. Porter, Esq., P.A., 9350 Financial Center, 9350 S. Dixie Highway, 10th Floor, Miami, Florida 33156 Telephone 786-425-2299; Jim@JamesMPorterPA.com;  Albert J. Slap, Esq., 42 Grand Bay Estates Circle, Key Biscayne, FL 33149, 970-710-9553, albertslap@slaplaw.com; and Julie Dick, Esq., Abraham Law Group, 151 Crandon Blvd., #100, Key Biscayne, FL 33149, jdick@abrahamlawgroup.com.

After conclusion of the 60-day Notice Period, Biscayne Bay Waterkeeper, on its own behalf and on behalf of its individual members, and Judi Koslen, on her own behalf, intend to commence legal action against Miami-Dade County in the United States District Court for the Southern District of Florida for violations of the Clean Water Act and intend to seek all appropriate injunctive relief, as well as civil penalties for each and every day that the County has discharged pollutants into the navigable waters of the United States without a valid permit or otherwise violated the CWA, its implementing regulations, the NPDES permits, and the Consent Decrees. Additionally, Notifiers intend to seek injunctive relief in order to obtain a permanent solution to the serious water pollution that the County's discharges are causing. Notifiers have not yet begun discovery in this matter. It is likely that when discovery is initiated, they will discover other violations by the County of the Clean Water Act– violations of which the County has actual notice. Notifiers hereby include by reference any and all County violations of the CWA, it implementing regulations or the NPDES permits (having taken place during the past 5-years) that are uncovered during discovery.

Very truly yours,

Paul J. Schwiep

PJS/lm
Enclosures

Notice of Intent to Sue
October 8, 2012
Page 14

## INDEX OF EXHIBITS

Ex. "A"        FDEP Warning Letters to County dated May 9, 2007; April 1, 2008; July 21, 2008; October 16, 2008; November 3, 2009; November 12, 2009 (two Warning Letters with this same date); October 9, 2009 (two Warning Letters with this same date); October 27, 2009; July 13, 2010; October 13, 2010; October 20, 2010; October 27, 2010; June 2, 2011; September 14, 2011; December 13, 2011;  April 26, 2012; May 3, 2012; and June 6, 2012.

Ex. "B"        July 2012 Miami-Dade Couty Water & Sewer Infrastructure Report

Ex. "C"        Sanitary Sewer Overflow 24 Hour Spreadsheet

Ex. "D"        May 1, 2011, Miami-Dade Water and Sewer Department CMOM Self-Assessment Report

Ex. "E"        Draft FDEP Consent Order

Ex. "F"        February 29, 2012, draft U.S. EPA Consent Decree

Ex. "G"        1994 First Partial Consent Decree

Ex. "H"        1995 Second And Final Partial Consent Decree

Ex. "I"        Miami-Dade Water and Sewer Department Consent Decree Project List

Ex. "J"        June 12, 2012, U.S. EPA Notice of Violation

Ex. "K"        Central Plant Effluent Violations

Ex. "L"        October 28, 2010, October 29, 2010, and July 17, 2012, FDEP Central Plant Compliance Inspection Reports

Ex. "M"        September 29, 2009, U.S. EPA Central Plant Inspection Report

Ex. "N"        Miami-Dade County Comprehensive Annual Financial Report For Fiscal Year Ended September 30, 2011

Ex. "O"        North Plant Effluent Violations

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Honorable Lisa Jackson
US Environmental Prot. Agency
Ariel Rios Bldg.
1200 Pennsylvania Ave, NW
Washington, DC 20460

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X _Lidsa W El_    ☐ Agent  ☐ Addressee

B. Received by (Printed Name)    C. Date of Delivery  10/5/12

D. Is delivery address different from item 1? ☐ Yes
   If YES, enter delivery address below: ☐ No

3. Service Type
   ☒ Certified Mail   ☐ Express Mail
   ☐ Registered       ☐ Return Receipt for Merchandise
   ☐ Insured Mail     ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)    ☐ Yes

2. Article Number
   (Transfer from service label)    7008 2810 0001 7920 0694

PS Form 3811, February 2004    Domestic Return Receipt    102595-02-M

---

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Ms. Gwen Fleming
Regional Admin, Region IV
US Environmental Prot. Agency
61 Forsyth Street, SW
Atlanta, GA 30303

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X _V Head_    ☐ Agent  ☐ Addressee

B. Received by (Printed Name)    C. Date of Delivery  10-12-12

D. Is delivery address different from item 1? ☐ Yes
   If YES, enter delivery address below: ☐ No

3. Service Type
   ☒ Certified Mail   ☐ Express Mail
   ☐ Registered       ☐ Return Receipt for Merchandise
   ☐ Insured Mail     ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)    ☐ Yes

2. Article Number
   (Transfer from service label)    7008 2810 0001 7920 0700

PS Form 3811, February 2004    Domestic Return Receipt    102595-02-M-1540

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Honorable Carlos Gimenez
Mayor
111 NW 1 Street
Miami, FL 33128

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X _____
☐ Agent
☐ Addressee

B. Received by ( Printed Name)    C. Date of Delivery

D. Is delivery address different from item 1?  ☐ Yes
If YES, enter delivery address below:  ☐ No

3. Service Type
☒ Certified Mail    ☐ Express Mail
☐ Registered    ☐ Return Receipt for Merchandise
☐ Insured Mail    ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)    ☐ Yes

2. Article Number
(Transfer from service label)    7008 2810 0001 7920 0687

PS Form 3811, February 2004    Domestic Return Receipt    102595-02-M-1540

---

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

John Renfrow, Director
Miami Dade Water +
Sewer Dept.
3071 SW 38 Ave
Miami, FL 33146

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X _____
☐ Agent
☐ Addressee

B. Received by ( Printed Name)    C. Date of Delivery
Victor Lewis    10/10

D. Is delivery address different from item 1?  ☐ Yes
If YES, enter delivery address below:  ☐ No

3. Service Type
☒ Certified Mail    ☐ Express Mail
☐ Registered    ☐ Return Receipt for Merchandise
☐ Insured Mail    ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)    ☐ Yes

2. Article Number
(Transfer from service label)    7008 2810 0001 7920 0724

PS Form 3811, February 2004    Domestic Return Receipt    102595-02-M-1540

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete Item 4 If Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailplece, or on the front If space permits.

1. Article Addressed to:

Herschel T. Vinyard, Jr.
Florida Dept. of Env. Prot.
3900 Commonwealth
Blvd. MS 49
Tallahassee, FL 32399

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X _____    ☐ Agent
                     ☐ Addressee

B. Received by (Printed Name)    C. Date of Delivery
ROSCOE HOLTON

D. Is delivery address different from Item 1?  ☐ Yes
If YES, enter delivery address below:          ☐ No

3. Service Type
☒ Certified Mail      ☐ Express Mail
☐ Registered          ☐ Return Receipt for Merchandise
☐ Insured Mail        ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)            ☐ Yes

2. Article Number
(Transfer from service label)    7008 2810 0001 7920 0717

PS Form 3811, February 2004        Domestic Return Receipt        102595-02-M-1540